MICHAEL S. KING, Plaintiff v. CAROL P. KING, Defendant

No. COA01-1338

(Filed 17 September 2002)

**1. Child Support, Custody, and Visitation— support—motion to reduce—income voluntarily depressed**

The trial court did not err in denying a motion to reduce child support by finding that defendant-realtor had voluntarily depressed her income and had not acted in good faith where her supervisor did not see defendant for one to two weeks prior to placing defendant on a leave of absence, defendant claimed that this trial was interfering with her work, the amount of time taken by the trial was not as great as defendant had indicated and should not have interfered with her income, and the trial court was left with no explanation for defendant's actions.

**2. Appeal and Error— preservation of issues—child support— presumption of changed circumstances—not properly raised**

Issues relating to whether a defendant in an action to modify child-support was entitled to a presumption of changed circum-

stances under the Child Support Guidelines were not properly before the Court of Appeals where defendant did not request a modification of her obligations on the basis of the Guidelines presumption and did not point to any place in the record on appeal where she raised the issue to the trial court after the appropriate time period had run.

Appeal by defendant from orders filed 6 June 2000 and 17 April 2001 by Judge H. William Constangy in Mecklenburg County District Court. Heard in the Court of Appeals 13 August 2002.

*James A. Warren, Jr. for plaintiff appellee.*

*The Tryon Legal Group, by Jerry Alan Reese, for defendant appellant.*

GREENE, Judge.

Carol P. King (Defendant) appeals an order filed 6 June 2000 denying her motion to reduce child support and an order filed 17 April 2001 denying her motion for reconsideration and amendment of the 6 June 2000 order.

On 28 January 1999, Defendant filed a motion for modification of child support (the Motion). The Motion stated the trial court had entered a previous order for child support on 17 December 1996 (the 1996 order), which based the parties' child support obligations on a monthly gross income of $2,800.00 for Defendant and $3,378.00 for Defendant's former husband, Michael Stephen King (Plaintiff). A subsequent order was entered by the trial court on 30 March 1998 denying Defendant's motion to modify her monthly child support obligation of $560 per month under the 1996 order. In the Motion, Defendant requested a modification of child support based on a change of circumstances in that: (1) Plaintiff's income had substantially increased; (2) Defendant's income as a real estate agent had substantially decreased; and (3) the number of actual overnights the parties' children spent with each parent was substantially different from the percentages used in calculating the child support obligations in the 1996 order.

The evidence presented at the modification hearing revealed Defendant was employed as a real estate agent by Carolinas Prudential Realty. Joanne LaVecchia (LaVecchia), Defendant's supervisor, testified Defendant was "a good agent . . . when she work[ed]."

By July 1999, Defendant had already earned $16,000.00 and was on course to make more money than she had earned the previous year. Around September 1999, however, LaVecchia placed Defendant on a leave of absence. LaVecchia had not seen Defendant for one to two weeks and had become concerned. When LaVecchia telephoned Defendant to ask why she had not checked in with the office, Defendant failed to explain why she could not work. Defendant instead alluded to the fact that the trial in this matter was "going on and on" and stated that "as soon as [the trial] was over, she[] [would] be okay and [they would] go forward." When LaVecchia later learned the actual time frame of the trial, she was surprised because Defendant had given her the impression that Defendant "was in trial more than that."

Defendant testified she had made "good money" in real estate over the last ten years. She further stated she "probably could do a lot better in [her] real estate sales, . . . but until this child support [matter got] straightened out, it[] [was] not there."

In an order dated 6 June 2000, the trial court found in pertinent part that:

2. In 1999, . . . [D]efendant's 1099 from Carolinas Prudential Realty showed gross earnings of $30,594.35. In addition to that[,] [Defendant] earned rental income of $200.00 per month. By the end of June, 1999, she had earned $16,000.00 as a realtor and still earns $200.00 per month in rental income in addition to her earnings as a realtor. Thus, half[]way through 1999, she was earning income at a pace ahead of what she earned in 1998.

. . . .

5. For approximately ten (10) months out of the year, [Defendant] does not have primary physical custody of the minor children, which allows her additional time to devote towards her work as a realtor. However, she goes for long periods of time when she does not contact the realty office and is not seen at the realty office.

6. [D]efendant does not avail herself of opportunities to earn income through her employment with the realty agency.

7. [D]efendant quit her employment voluntarily as a realtor at or near the end of September 1999. [D]efendant testified that she

was on a "leave of absence" from Carolinas Prudential Realty. She had a meeting with LaVecchia and stated that the reason she was no longer working was because of "court." LaVecchia stated she did not hear from or see . . . [D]efendant for a long time. LaVecchia was concerned about . . . [D]efendant's lack of production. The [trial] court did not learn that . . . [D]efendant had voluntarily stopped working until that portion of the trial which commenced on January 31, 2000. The [trial] court [cannot] find that the period of time . . . [D]efendant has been involved in the trial of this matter should or could have interfered with her income as a realtor. It is clear . . . [D]efendant has not worked at her employment as a realtor since September[] 1999. No satisfactory reason has been offered to the [trial] court as to why . . . [D]efendant did not or is not working. [D]efendant's [r]ealtors license was de-activated in December[] 1999. LaVecchia said [Defendant] was a "good agent."

8. The [trial] court finds that . . . [D]efendant has an income earning capacity as a realtor of at least $30,000.00 annually and earns a rental income of $200.00 a month in addition thereto. The [trial] court further finds that [Defendant] has earned this income for a number of years and is capable of earning that income as a real estate agent if she would work at said career at this time.

. . . .

12. From that evidence, the [trial] court [cannot] find that the number of overnights spent by the minor children with each party is significantly different, if at all different, from the shared custody order entered previously in this cause.

13. The [trial] court [cannot] find from the evidence that significant, regular contributions are made by third parties to . . . [P]laintiff or to the benefit of the minor children . . . . Since the [trial] court concludes hereinbelow that . . . [D]efendant has voluntarily suppressed her income and that there has not been a material and substantial change in circumstances regarding her ability to pay child support, the [trial] court will not address the issue of deviation from the North Carolina [C]hild [S]upport [G]uidelines.

14. The [trial] court finds that . . . [D]efendant has voluntarily suppressed her income and that she has failed to prove that there

has, in the aggregate, been a substantial change in circumstances sufficient to warrant modification of child support.

Based on these findings, the trial court denied the Motion.

On 16 June 2000, Defendant filed a motion for reconsideration and amendment of the trial court's 6 June 2000 order. The trial court entered an order on 17 April 2001 in which it amended its 6 June 2000 order to include the following language: "[D]efendant's actions which reduced her income were not taken in good faith. The earnings capacity rule should be imposed. The [trial] [c]ourt concludes that . . . [D]efendant engaged in a deliberate depression of her income." The trial court denied Defendant's motion in all other respects.

---

The dispositive issues are whether: (I) the evidence supports the trial court's findings that Defendant voluntarily depressed her income and that her actions were not taken in good faith; and (II) Defendant was entitled to a presumption of a substantial change of circumstances under the North Carolina Child Support Guidelines.

I

[1] A party's capacity to earn income may become the basis of a child support award if it is found that the party voluntarily depressed her income. *Mittendorff v. Mittendorff*, 133 N.C. App. 343, 344, 515 S.E.2d 464, 466 (1999); *Askew v. Askew*, 119 N.C. App. 242, 244-45, 458 S.E.2d 217, 219 (1995) (earning capacity will be used if a party "deliberately depressed [her] income or otherwise acted in deliberate disregard of the obligation to provide reasonable support for the child"). Before the earning capacity rule may be applied, there must, however, also be a showing, reflected by the trial court's findings, "that the actions which reduced a party's income were not taken in good faith." *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997); *see Cauble v. Cauble*, 133 N.C. App. 390, 395, 515 S.E.2d 708, 712 (1999) (the trial court's findings must be supported by competent evidence). "The burden of showing good faith rests with the party seeking a reduction in the child support award." *Mittendorff*, 133 N.C. App. at 344, 515 S.E.2d at 466.

In this case, there was evidence establishing Defendant essentially stopped working in September 1999. Prior to being placed on a leave of absence, LaVecchia had not seen Defendant for one to two weeks. In explaining her absence to LaVecchia, Defendant claimed the trial was interfering with her ability to work and indicated the

trial was taking up more time than it actually did, as LaVecchia later discovered. The trial court found "the period of time . . . [D]efendant ha[d] been involved in the trial of this matter should [not] or could [not] have interfered with her income as a realtor." Having rejected Defendant's testimony, *see Scott v. Scott*, 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994) ("[q]uestions of credibility and the weight to be accorded the evidence remain in the province of the finder of facts"), the trial court was left with no explanation for Defendant's actions, leading to the conclusion that by not reporting to her supervisor in September 1999 Defendant voluntarily engaged in conduct that led to her placement on a leave of absence. Furthermore, as Defendant did not carry her burden of showing good faith, *see Mittendorff*, 133 N.C. App. at 344, 515 S.E.2d at 466, the trial court, in the absence of any evidence regarding intent, properly found that "[D]efendant's actions which reduced her income were not taken in good faith."

II

**[2]** Defendant next argues in her brief to this Court that, regardless of whether the trial court considered her earning capacity or her actual income, she was entitled to a presumption of changed circumstances based on the North Carolina Child Support Guidelines. We disagree.

The North Carolina Child Support Guidelines provide that:

[i]n any proceeding to modify an existing order which is three years old or older, a deviation of 15% or more between the amount of the existing order and the amount of child support resulting from application of the Guidelines shall be presumed to constitute a substantial change of circumstances warranting modification.

N.C. Child Support Guidelines, 2001 Ann. R. (N.C.) 33, 36 [hereinafter Guidelines]. The three-year period required before application of this rule has been interpreted to be the period between the entry of the support order that is currently in effect and the time of the hearing on the party's motion to modify child support. *See Wiggs v. Wiggs*, 128 N.C. App. 512, 515, 495 S.E.2d 401, 404 (1998).

We first note Defendant, in the Motion, did not request a modification of her child support obligations on the basis of the presumption pursuant to the Guidelines. Furthermore, Defendant, in her brief, points to no place in the record where she raised this issue to the trial court after December 1999 when the three-year period had run.

Therefore, the question of whether Defendant was entitled to a presumption under the Guidelines is not properly before this Court. *See* N.C.R. App. P. 10(b)(1) (2001).

Defendant also assigns as error the trial court's findings relating to the number of overnights the children spent with each parent and the lack of any third-party contributions to Plaintiff. The issues raised by this assignment of error, however, were only discussed in connection with Defendant's argument for applying the presumption under the Guidelines. As we have found Defendant did not raise the issue of the presumption to the trial court, we need not address this assignment of error.[1]

Affirmed.

Judges TIMMONS-GOODSON and HUNTER concur.

---

1. We nevertheless note that a review of the relevant evidence reveals the trial court's findings on these issues are supported by competent evidence.