MATTHEW H. COOK, Plaintiff v. MARIA ELIANNE COOK, Defendant

No. COA02-1188

(Filed 5 August 2003)

**1. Child Support, Custody, and Visitation— support—changing jobs—earning capacity rule—bad faith required**

The trial court abused its discretion by using the earning capacity rule to calculate child support where there was no showing that plaintiff had reduced his income in bad faith. The law requires both voluntary underemployment or unemployment and bad faith. The court found in this case that the reduction in income which came from leaving one job (YMCA aquatics director) while looking for another (full time teaching) was not in bad faith.

**2. Child Support, Custody, and Visitation— support—changing investment strategy—earning capacity rule—bad faith required**

 The trial court abused its discretion when calculating child support by imputing income from investments where the court found that plaintiff had changed his investment strategy from income to growth, but made no findings as to motive.

Appeal by plaintiff from order entered 29 April 2002 by Judge Gary S. Cash in Buncombe County District Court. Heard in the Court of Appeals 13 May 2003.

 *Law Office of Heather A. Shade, by Heather A. Shade; and Gum & Hillier, P.A., by Howard L. Gum, for plaintiff appellant.*

 *Robert E. Riddle, P.A., by Diane K. McDonald, for defendant appellee.*

McCULLOUGH, Judge.

Plaintiff Matthew H. Cook and defendant Maria Elianne Cook were married on 11 January 1999. Soon after, their child, John Aaron Cook, was born on 9 May 1999. Plaintiff and defendant separated on 27 October 1999 and were subsequently divorced. Defendant was granted primary custody of the child.

On 1 February 2001, a child support order was entered mandating that plaintiff pay child support to defendant in the amount of $516.00 per month. In addition, plaintiff was maintaining health insurance for the child, costing an additional $232.00 a month.

The February 2001 order noted that plaintiff was employed and earned $24,500.00 per year at his position at the local YMCA. He also earned $11,400.00 per year from interest and dividend income from money he had inherited from his father and subsequently invested. The trial court included this amount in calculating plaintiff's child support obligation in accordance with the North Carolina Child Support Guidelines, rather than deviating from them as requested by defendant. Defendant was not employed at the time, as she was a student at the University of North Carolina at Asheville. There were no day-care expenses for the child at that time.

On 9 August 2001, defendant filed a motion in the cause seeking modification of the previous child support order pursuant to N.C. Gen. Stat. § 50-13.4 (2001). According to her motion, she had pro-

COOK v. COOK

[159 N.C. App. 657 (2003)]

cured employment as a realtor, anticipating approximately $20,000.00 in earnings her first year, and she now had day-care expenses. Also in her motion, it was noted that plaintiff had ceased paying for health insurance.

The matter was heard on 14 December 2001. The parties stipulated that a substantial change in circumstances had occurred based upon the facts of defendant's employment and day-care costs. Defendant had become a realtor for Coldwell Banker, and she had secured a place for the child at a day-care facility beginning on 2 January 2002 at a cost of $441.00 per month. Thus, all that remained was recalculation of plaintiff's child support obligation.

While circumstances for defendant had changed, so had those surrounding plaintiff. Since the first order for child support, his income had decreased. In May of 2001, he became certified as a teacher. As a result of this, coupled with other problems at the YMCA, plaintiff resigned his position with the YMCA. Plaintiff did not have employment secured and searched for full-time teaching employment. What he found was part-time and substitute teaching positions. His testimony at the hearing revealed that he had earned the following in those capacities during the months before the hearing: $57.00 in September; $1,054.50 in October; and $1,665.00 in November.

Further, plaintiff's interest and dividend income had also changed. First, plaintiff's investment portfolio had declined in overall value since the previous hearing by 11.5%. Second, his portfolio had been restructured by him to achieve long-term growth. As a result, his interest and dividend income was now, according to the trial court, $7,200.00 ($600.00 a month).

In his order of 29 April 2002, the Honorable Gary S. Cash found that plaintiff had voluntarily reduced his income by resigning his position at the YMCA, yet this was not done in bad faith. Nevertheless, Judge Cash imputed to plaintiff income in the amount of $24,500.00 (former YMCA wage), as "he has the ability to earn said amount as wages."

Judge Cash also found that plaintiff's income from interest and dividends had been reduced due, at least in part, to intentional actions on his part. As a result, his income had dropped from $11,400.00 to $7,200.00 annually. The order did not make a finding as to whether these actions were done in bad faith. Rather than use the present income figure, $7,200.00, Judge Cash fashioned a formula of his own to determine what value he would impute. As mentioned

COOK v. COOK

[159 N.C. App. 657 (2003)]

above, the value of the account had dropped by 11.5% since the previous hearing. This was due to market conditions and not to any action by plaintiff. Yet the restructuring was because of plaintiff's action, according to Judge Cash. Thus, he imputed the interest and dividend income figure from the previous hearing minus 11.5% (11.5% of $11,400.00 equals $1,311.00), arriving at the new figure of $10,089.00 ($11,400.00 minus $1,311.00).

Accordingly, Judge Cash added the two income amounts ($24,500.00 + $10,089.00) to arrive at plaintiff's gross income, $34,589.00, "for the purpose of establishing child support . . . ." Plaintiff was ordered to pay $637.14 on child support per month. Plaintiff appeals.

On appeal, plaintiff contends that the trial court erred in calculating child support by (I) imputing employment income to plaintiff when he did not reduce his income in bad faith or to avoid or minimize child support; and (II) imputing investment income to plaintiff rather than using the actual investment income at the time of the hearing.

I.

[1] In his first assignment of error, plaintiff contends that the trial court abused its discretion by employing the "earning capacity rule" for the purposes of calculating guideline child support absent a showing that plaintiff voluntarily reduced his income in bad faith.

When modifying the amount of a child support obligation, the trial court must generally consider the party's actual income at the time of trial in accordance with the North Carolina Child Support Guidelines. *Ellis v. Ellis*, 126 N.C. App. 362, 364, 485 S.E.2d 82, 83 (1997). However, those guidelines provide that:

> If either parent is voluntarily unemployed or underemployed to the extent that the parent cannot provide a minimum level of support for himself or herself and his or her children when he or she is physically and mentally capable of doing so, *and the court finds that the parent's voluntary unemployment or underemployment is the result of a parent's bad faith or deliberate suppression of income to avoid or minimize his or her child support obligation*, child support may be calculated based on the parent's potential, rather than actual, income.

N.C. Child Support Guidelines, 2003 Ann. R. (N.C.) 33, 35 (2003) (emphasis added).

COOK v. COOK

[159 N.C. App. 657 (2003)]

Our Court has established that in this type of case:

The primary issue is "whether a party is motivated by a desire to avoid his reasonable support obligations. To apply the earnings capacity rule, the trial court must have sufficient evidence of the proscribed intent." *Wolf*, 151 N.C. App. at 527, 566 S.E.2d at 519. The earnings capacity rule can be applied if the evidence presented shows that a party has disregarded its parental obligations by:

(1) failing to exercise his reasonable capacity to earn, (2) deliberately avoiding his family's financial responsibilities, (3) acting in deliberate disregard for his support obligations, (4) refusing to seek or to accept gainful employment, (5) willfully refusing to secure or take a job, (6) deliberately not applying himself to his business, (7) intentionally depressing his income to an artificial low, or (8) intentionally leaving his employment to go into another business.

*Wolf*, 151 N.C. App. at 526-27, 566 S.E.2d at 518-19 (citing *Bowes v. Bowes*, 287 N.C. 163, 214 S.E.2d 40 (1975)). The situations enumerated in *Wolf* are specific types of bad faith that justify the trial court's use of imputed income or the "earnings capacity" rule.

*Mason v. Erwin*, 157 N.C. App. 284, 289, 579 S.E.2d 120, 123 (2003).

The trial court made the following finding of fact as to plaintiff's employment income:

6. That at the time of the previous Order, the Plaintiff was employed at the YMCA as an aquatics director; that his salary was $24,500.00 per year; that on May 3, 2001, the Plaintiff wrote a letter to his superior at the YMCA in which he voluntarily terminated his employment, effective June 1, 2001; that the Plaintiff had no other anticipated employment, but hoped to obtain full-time employment as a teacher, for which he is certified. *That the Plaintiff knew by terminating his employment his income would be substantially reduced and that his child would no longer have health insurance coverage; that this decision by Plaintiff to voluntarily reduce his employment was not made in bad faith, but was a deliberate deduction of and depression of Plaintiff's wage income;* that this Court therefore should impute to Plaintiff income

from wages of $24,500.00; that he has the ability to earn said amount as wages.

(Emphasis added.)

The trial court has not made sufficient findings to justify applying the earning capacity rule in this case. It made the finding that plaintiff deliberately reduced his income, but did not do so in bad faith, and then applied the earning capacity rule. It appears that the trial court believed that it could impute earnings to plaintiff merely because he voluntarily reduced his income. This is not the law, as it requires both.

This Court has visited this issue several times in the past, and has always required bad faith with voluntary depression of income:

It is clear . . . that "[b]efore the earnings capacity rule is imposed, it must be shown that [the party's] actions which reduced his income were not taken in good faith." *Askew [v. Askew]*, 119 N.C. App. [242] at 245, 458 S.E.2d [217] at 219 [(1995)]. *See also Schroader v. Schroader*, 120 N.C. App. 790, 794, 463 S.E.2d 790, 792-93 (1995); *Kennedy v. Kennedy,* 107 N.C. App. 695, 701, 421 S.E.2d 795, 798 (1992); *Fischell [v. Fischell]*, 90 N.C. App. [254] at 256, 368 S.E.2d [11] at 13 [(1988)]; *O'Neal v. Wynn*, 64 N.C. App. 149, 153, 306 S.E.2d 822, 824 (1983), *aff'd*, 310 N.C. 621, 313 S.E.2d 159 (1984).

*Ellis*, 126 N.C. App. at 364, 485 S.E.2d at 83.

Plaintiff's voluntary depression of income must have been made with an intent to avoid his child support obligation. The only finding by the trial court on this point was that it was not made in bad faith. This should have ended the discussion and the earning capacity rule should not have been applied.

Defendant contends that the recent case of *King v. King*, 153 N.C. App. 181, 568 S.E.2d 864 (2002) has somehow changed the law in this area, and is controlling. We disagree for a myriad of reasons. In that case, the movant asked for a reduction in her child support obligation due to a change in circumstances, namely that her income had substantially decreased. The evidence showed that this was because she had essentially stopped working and did not give the trial court a satisfactory explanation for her actions. *Id.* at 185-86, 568 S.E.2d at 866. Defendant stresses the following quote from *King*: "A party's capacity to earn income may become the basis of a child support

COOK v. COOK

[159 N.C. App. 657 (2003)]

award if it is found that the party voluntarily depressed her income." *Id.* at 185, 568 S.E.2d at 866. Yet, defendant ignores the following qualification: "Before the earning capacity rule may be applied, there must, however, also be a showing, reflected by the trial court's findings, 'that the actions which reduced a party's income were not taken in good faith.'" *Id.* (quoting *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997)). The Court in *King* made special note that, "as Defendant did not carry her burden of showing good faith . . . the trial court, in the absence of any evidence regarding intent, properly found that '[D]efendant's actions which reduced her income were not taken in good faith.'" *Id.* at 186, 568 S.E.2d at 866-67. *King* is clearly controlling. Unfortunately for defendant, it is a mere restatement of the existing law which requires that voluntary reductions be made in bad faith.

Bad faith is a general term given to situations which trigger the earning capacity rule. An intentional reduction in income is not punishable by the earning capacity rule unless it is proven to have been made to avoid a child support obligation. Therefore, plaintiff's assignment of error is sustained.

II.

[2] Defendant's second assignment of error contends that the trial court similarly abused its discretion by imputing income from plaintiff's investment account.

The trial court made the following findings with regard to plaintiff's interest and dividend income:

9.  In the summer of 1999, the Plaintiff received an inheritance in excess of $300,000.00; that at the time of the previous child support hearing, the Plaintiff had invested the inheritance at Bank of America; that the account at that time had a value of approximately $260,000.00; that following September 11, 2001, the account dropped in value to $230,000.00; that since the previous hearing, the investment account had a decrease in value of 11.5%; that this drop in value is due to passive events beyond the control of the Plaintiff.

10. That the Plaintiff's banker testified that the other decrease in income from dividends and interest income was due to the Plaintiff's decision to restructure his portfolio from holdings that produced more income to holdings that would favor long term growth; *that this decision was intentional on the part*

*of the Plaintiff that the Court would find that this change in income was active,* but there is insufficient evidence to determine the exact impact of this decision on Plaintiff's gross income from this source.

11. That the Plaintiff has monthly distributions from the investment account of $600.00 or $7,200.00 annually; that at the time of the previous hearing, the investment account produced on an annual basis dividends and interest income in the amount of $11,400.00; that the Court will reduce the Plaintiff's income from this source by 11.5% of the investment income due to passive events happening in the economy; that the Plaintiff's investment income is $10,089.00.

(Emphasis added.)

Here again, the trial court found that plaintiff intentionally decreased his income and then applied the earning capacity rule. The trial court failed here to even make a finding as to potential motive of plaintiff behind such an investment strategy. Thus, we sustain plaintiff's assignment of error.

This Court has handled many similar cases to the present case, so it bears repeating:

In modifying the amount of a child support obligation, the trial court must generally consider a party's *actual* income. The trial court may only consider a party's *earning capacity* if it finds that the party was "acting in bad faith by deliberately depressing her income or otherwise disregarding the obligation to pay child support."

In this case, the trial court erred in considering Defendant's earning capacity without finding that Defendant had deliberately depressed her income in bad faith or had otherwise disregarded her child support obligation. We therefore remand for entry of findings on this issue, and for recalculation of the amount of Defendant's child support obligation if necessary.

*Kowalick v. Kowalick,* 129 N.C. App. 781, 787-88, 501 S.E.2d 671, 675-76 (1998) (citations omitted).

Vacated and remanded.

Judges WYNN and ELMORE concur.