BALAWEJDER v. BALAWEJDER

[216 N.C. App. 301 (2011)]

WITOLD BALAWEJDER, Plaintiff v. ANITA BALAWEJDER, Defendant

No. COA11-184

(Filed 18 October 2011)

## 1. Child Custody and Support—modification—permanent order

The trial court did not err by treating the 26 March 2009 memorandum as a modification of a permanent child custody order instead of a temporary child custody order.

## 2. Appeal and Error—preservation of issues—inconsistent arguments—cannot change horses on appeal

The trial court did not abuse its discretion in a child custody modification case by allowing evidence and making findings as to the conditions that existed at the time of the 26 March 2009 memorandum in its 10 June 2010 order modifying custody. This argument was logically inconsistent with plaintiff father's first argument, and plaintiff could not seek to "change horses" on appeal.

## 3. Child Custody and Support—modification—findings of domestic violence

The trial court did not abuse its discretion in a child custody modification case by including findings as to defendant mother's domestic violence complaint even though defendant had voluntarily dismissed her Chapter 50B complaint in the 26 March 2009 memorandum. If the trial court found that domestic violence had occurred which affected the child, it was bound to consider this fact in making its custody determination.

## 4. Child Custody and Support—trial court not limited by specific modification requests—best interests of child

The trial court did not err in a child custody modification case by allegedly making changes to the prior custody order without notice to plaintiff father. Trial courts are vested with broad discretion in child custody matters and are not limited by the specific modifications as requested by any party but may make any modifications which they determine are supported by evidence and are in the best interest of the child.

BALAWEJDER v. BALAWEJDER

[216 N.C. App. 301 (2011)]

**5. Child Custody and Support—failure to impute income— reduction not in bad faith or motivated by desire to avoid obligations**

The trial court did not abuse its discretion by failing to impute income to defendant mother for purposes of establishing child support. Defendant mother's reduction in income was not made in bad faith or motivated by a desire to avoid her reasonable support obligations.

**6. Child Custody and Support—Child Support Guidelines— extraordinary expenses—tuition—day care—summer camp**

The trial court did not abuse its discretion by entering a child support order that allegedly went beyond the Child Support Guidelines in adding additional support requirements to pay 97% of the minor child's tuition, 97% of any unspecified work-related day care expense incurred by defendant, and unspecified summer camp expenses. The trial court did not deviate from the guidelines and these types of extraordinary expenses are specifically allowed by the guidelines.

**7. Evidence—demeanor of witnesses—findings of fact based on observations**

The trial court did not err in a child custody modification and child support case by its finding of fact 93. The trial court's duty as the finder of fact included observing the demeanor of all witnesses, including plaintiff husband, during the trial and to make appropriate findings of fact based on these observations.

**8. Attorney Fees—child custody modification—child support—trial court divested of jurisdiction once notice of appeal filed**

The trial court erred in a child custody modification and child support case by awarding attorney fees. After plaintiff filed notice of appeal, the trial court was divested of jurisdiction to enter orders for attorney fees pending the completion of this appeal. The fees were vacated and the issue was remanded for reconsideration.

Appeal by plaintiff from orders entered on or about 10 June 2010 and 1 October 2010 by Judge Becky T. Tin in District Court, Mecklenburg County. Heard in the Court of Appeals 1 September 2011.

BALAWEJDER v. BALAWEJDER

[216 N.C. App. 301 (2011)]

*Billie R. Ellerbe, for plaintiff-appellant.*

*Myers Law Firm, PLLC, by Matthew R. Myers, for defendant-appellee.*

STROUD, Judge.

Witold Balawejder ("plaintiff") appeals from the trial court's orders modifying child custody, awarding permanent child support, and awarding attorney's fees to Anita Balawejder ("defendant"). For the following reasons, we affirm the trial court's order modifying child custody and awarding child support and vacate the trial court's orders for attorney's fees.

## I. Background

Plaintiff and defendant were married on 17 January 1998 in Sweden and moved to Charlotte, North Carolina in 2005. One child was born of the marriage on 26 September 2005. On 9 December 2008, plaintiff filed a complaint against defendant alleging claims for divorce from bed and board, child custody, child support, and equitable distribution. On or about 23 December 2008, defendant filed her answer, raising counterclaims for child custody, child support, post separation support, divorce from bed and board, alimony, attorney's fees, and raising motions for injunctive relief and "sequestration of real property[.]" On 26 December 2008, defendant filed a "Complaint and Motion for Domestic Violence Protection Order" pursuant to N.C. Gen. Stat. Chapter 50B against plaintiff, alleging that plaintiff had grabbed her, pushed her down a flight of stairs, and then tried to prevent her from calling 911. On the same day, the district court issued an "Ex Parte Domestic Violence Order of Protection" against plaintiff, finding that "the minor child was at the residence during the assault and knew the defendant had pushed the plaintiff." On 29 January 2009, the trial court consolidated plaintiff's Chapter 50 complaint with defendant's Chapter 50B domestic violence complaint.

On 26 March 2009, the trial court entered a handwritten "Memorandum of Judgment/Order" ("the 26 March 2009 memorandum") signed by both parties and their attorneys which stated that it resolved the issues of child custody and visitation "as a final order" and provided for temporary child support and sequestration of the marital residence; the memorandum specifically reserved the issues of equitable distribution, alimony, and attorney fees for later determination. On 15 September 2009, the trial court entered an order for temporary child support, post-separation support, temporary injunc-

tive relief, and attorney fees. On 18 December 2009, plaintiff filed a motion for modification of the custody provisions of the 26 March 2009 memorandum. On 20 January 2010, defendant filed her response to plaintiff's motion for modification, requesting that the trial court deny plaintiff's motion and award reasonable attorney fees. On or about 10 June 2010, the trial court entered its "Order for Permanent Child Custody and Support" granting in part and denying in part defendant's motion to modify the 26 March 2009 memorandum and ordering permanent child support. On 13 July 2010, plaintiff filed notice of appeal from the trial court's 26 March 2009 memorandum, the 10 June 2010 "Order for Permanent Child Custody and Child Support[,]" and from the order "entered on July 2010 [sic] that awarded Defendant attorney fees[.]" On 1 October 2010, the trial court filed an order awarding attorney's fees to defendant and a "supplemental order for attorney's fees" awarding further attorney's fees to defendant "for expenses incurred during trial and in preparing the final Custody and Child Support Order[.]" On appeal, plaintiff raises several arguments as to the 10 June 2010 order for permanent custody and child support and the orders awarding attorney fees to defendant.

## II. Permanent or Temporary Custody Order

[1] In his first argument, plaintiff contends that the trial court should have treated the 26 March 2009 memorandum as a temporary custody order, instead of considering the matter as a modification of a permanent custody order. If the 26 March 2009 memorandum was a temporary custody order, the trial court should have considered only the best interests of the minor child, and not whether there had been a substantial change of circumstances affecting the best interests of the child since the time of entry of the 26 March 2009 memorandum. We have stated that

> [t]he trial court has the authority to modify a prior custody order when a substantial change in circumstances has occurred, which affects the child's welfare. The party moving for modification bears the burden of demonstrating that such a change has occurred. The trial court's order modifying a previous custody order must contain findings of fact, which are supported by substantial, competent evidence. The trial court is vested with broad discretion in cases involving child custody, and its decision will not be reversed on appeal absent a clear showing of abuse of discretion. In determining whether a substantial change in circumstances has occurred: [C]ourts must consider and weigh all evi-

dence of changed circumstances which effect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child. In appropriate cases, either may support a modification of custody on the ground of a change in circumstances.

*Karger v. Wood*, 174 N.C. App. 703, 705-06, 622 S.E.2d 197, 200 (2005) (citations, brackets, and quotation marks omitted), *appeal dismissed*, 360 N.C. 481, 630 S.E.2d 665 (2006).

Despite the fact that plaintiff filed a motion for modification of the 26 March 2009 memorandum, which alleges various substantial changes in circumstances since entry of the memorandum, he claims that the 26 March 2009 memorandum was actually not a permanent order, but he did not have an opportunity to challenge the trial court's decision to treat the 26 March 2009 memorandum as a permanent child custody order because (1) he could not appeal to this Court from that order as he believed the order to be interlocutory, as the order did not dispose of all of the claims and there was no N.C. Gen. Stat. § 1A-1, Rule 54(b) certification from the trial court that it was a "final judgment[;]" (2) by the time the trial court indicated at the hearing that it was considering the 26 March 2009 memorandum as a permanent child custody order "the time for the [plaintiff] to either file a Rule 52 or 59 motion to wet [sic] the order aside, or enter notice of appeal . . . had long since expired[;]" (3) "[s]ince the [plaintiff] and Counsel didn't believe that the memorandum/order constituted a final order, [plaintiff] didn't file for relief pursuant to Rule 60 of the North Carolina Rules of Civil Procedure[;]" and (4) because of its decision to consider the prior order a permanent order, the trial court "informed [plaintiff's] Counsel that it would be necessary for the [plaintiff] to file a Motion for Modification of the memorandum, which was in fact done on 18 December 2010 [sic]." Plaintiff concludes that "[t]he Court's decision to sua sponte treat the 26 March 2009 order [as a permanent child custody order] with no input from the parties was reversible error that eventually subjected the Plaintiff to dual standards of 'substantial change in circumstances' and 'best interest of the child' in the trial of his motion for modification to modify the 26 March 2008 [sic] memorandum/order." Defendant counters that the 26 March 2009 memorandum was a "final order" and plaintiff "should be estopped from challenging its finality."

We first note that the transcript upon which plaintiff's argument regarding the trial court's alleged "sua sponte" determination that the

26 March 2009 memorandum was a permanent order is not in the record before us. Plaintiff argues that this occurred at a court date in July 2009, when "the court informed the parties that she considered the 26 March 2009 memorandum of judgement/order to be a permanent custody order [and] . . . . [t]he Trial Court informed Counsel that it would be necessary for the Appellant to file a Motion for Modification of the memorandum, which was in fact done on 18 December 2010." There is no transcript in the record from July 2009, and thus plaintiff's arguments regarding what the trial court "informed" the parties in July 2009 is in violation of North Carolina Rule of Appellate Procedure Rule 9(a). We have stated that

> "[i]t is the duty of the appellant to ensure that the record is complete." *Hicks v. Alford*, 156 N.C. App. 384, 389, 576 S.E.2d 410, 414 (2003). Rule 9(a)(1)(j) of the Rules of Appellate Procedure requires that the record on appeal in civil actions contain "copies of all other papers filed and statements of all other proceedings had in the trial court which are necessary to an understanding of all errors assigned unless they appear in the verbatim transcript of proceedings . . . ."

*First Gaston Bank of North Carolina v. City of Hickory*, ___ N.C. App. ___, ___, 691 S.E.2d 715, 718 (2010). To the extent that plaintiff's argument is based upon an alleged ruling by the trial court in July 2009, it is dismissed.

Aside from his argument regarding the trial court's alleged July 2009 ruling, plaintiff's argument on appeal is opposite from his position before the trial court. Plaintiff signed the 26 March 2009 memorandum, agreeing with its terms which plainly state that it "resolves *as a final order* the issues of custody and visitation" and, *inter alia*, that "the provisions of this Memorandum are fair and reasonable and [plaintiff] has had ample opportunity to obtain legal advice concerning the legal effect and terms of this Memorandum[.]" (emphasis added.) Additionally, plaintiff's attempt to change his custodial rights as established in the 26 March 2009 memorandum did not occur by filing a notice of hearing for a permanent child custody hearing, as he now argues would have been the proper procedure, but because the 26 March 2009 memorandum was a permanent child custody order, *see id.*, he filed a motion to modify that order, specifically alleging that "there has been a substantial change in circumstances that warrant a modification of the previous [26 March 2009 memorandum.]" In addition, at trial, plaintiff presented evidence of the changes in circumstances which he claimed made modification of custody necessary.

**BALAWEJDER v. BALAWEJDER**

[216 N.C. App. 301 (2011)]

When defendant made a motion for involuntary dismissal of plaintiff's motion to modify custody pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(b) at the close of defendant's evidence, plaintiff vigorously argued that he had shown changes in circumstances which entitled him to a change of custody. But on appeal plaintiff argues that it was a mistake for the trial court to consider the 26 March 2009 memorandum as a permanent child custody order and to consider the matter as a modification of custody, the very relief that he requested at trial.

> Our Supreme Court "has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount" in the appellate courts. . . . According to Rule of Appellate Procedure 10(b)(1), in order to preserve a question for appellate review, the party must state the specific grounds for the ruling the party desires the court to make. N.C.R. App. P. 10(b)(1) (2002). "The defendant may not change his position from that taken at trial to obtain a steadier mount on appeal."

*State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (citations and quotation marks omitted). Plaintiff's argument is without merit and is dismissed.

### III. Modification of the Custody Order

[2] Plaintiff next argues that in its 10 June 2010 order modifying custody, the trial court abused its discretion in allowing evidence and making findings as to the conditions that existed at the time of the 26 March 2009 memorandum.

We first note that this argument is logically inconsistent with plaintiff's first argument. Above, plaintiff argued that the trial court should have conducted a full custody hearing, which would require evidence as to circumstances existing prior to entry of the 26 March 2009 memorandum and indeed during the marriage, potentially since the child's birth. In addition, at trial plaintiff himself presented evidence as to the circumstances existing prior to entry of the 26 March 2009 memorandum.

Once again, plaintiff is seeking to change horses on appeal, and this is not permitted. *See Holliman*, 155 N.C. App. at 123, 573 S.E.2d at 685. Plaintiff does not argue that the trial court's findings of fact are not supported by the evidence but contends that the trial court abused its discretion in not limiting its findings to the facts which had occurred since the entry of the 26 March 2009 memorandum, as

"[i]nquiry into changed circumstances is generally restricted to events that have transpired since the entry of the order sought to be modified." Defendant responds that "[i]t should have been common-sense to Plaintiff-Appellant that in order for him, the party with the burden of proof, to prove a change of circumstances, the trial court would need to know the circumstances of the initial custody order."

In the 26 March 2009 handwritten "Memorandum of Judgment/ Order[,]" the trial court set out the terms of custody and visitation between the parties but made no findings pursuant to N.C. Gen. Stat. § 50-13.2(a) because no evidence was taken at the 29 March 2009 hearing, and both parties "waive[d] findings of fact and conclusions of law in the formal judgment/order memorializing th[e] Memorandum[.]" This Court has held that a memorandum of judgment regarding child custody which is entered by consent need not include finding of fact or conclusions of law. *See Buckingham v. Buckingham*, 134 N.C. App. 82, 90, 516 S.E.2d 869, 875 ("[T]he court should review a consent judgment to ensure that it does not contradict statutory, judicial, or public policy, but it need not make findings of fact or conclusions of law. When parties enter into an agreement and ask the court to approve the agreement as a consent judgment, they waive their right to have the court adjudicate the merits of the case. In the present case, the parties did not wish for the court to adjudicate child custody, having resolved that issue between them. Therefore, the court has no duty to make findings of fact or conclusions of law as to the child's best interest when it approved the parties' agreement."), *disc. review denied*, 351 N.C. 100, 540 S.E.2d 353 (1999). N.C. Gen. Stat. § 50-13.7(a) (2009) states in pertinent part that

> an order of a court of this State for custody of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested.

A "change of circumstances[,]" as applied to N.C. Gen. Stat. § 50-13.7 "means such a change as affects the welfare of the child." *In re Harrell*, 11 N.C. App. 351, 354, 181 S.E.2d 188, 189 (1971) (citations omitted).

In the 10 June 2010 order, the trial court made the following notation before listing its findings of fact as to the conditions that existed before and at the time of the 26 March 2009 memorandum:

*The following findings of fact provide context for the situation exiting at the time of entry of the March 26, 2009 Consent Custody Memorandum of Judgment:*

(Emphasis in original.) The trial court went on to explain after making these findings of fact:

> 39. The above Findings of Fact constitute the circumstances under which the [Memorandum of Judgment or "MOJ"] was entered into and provide a base line for determining whether Father has sufficiently proven that a substantial and material change in circumstances warrants this Court to modify the MOJ.

Logically, since plaintiff filed a motion for modification, the trial court would have to look back at the facts surrounding the best interests of the child, *see* N.C. Gen. Stat. § 50-13.2(a), at the time of the 26 March 2009 memorandum and make appropriate findings in order to "provide a base line" before it could determine if there had been "a substantial and material change in circumstances" that would warrant a modification in child custody as plaintiff had requested. The trial court appropriately made findings "concern[ing the] physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child." *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978). The trial court then compared these findings as to the circumstances in March 2009 with evidence and testimony as to the changes in circumstances since that time. The trial court could not determine whether there had been a substantial change in circumstances without looking at the conditions as they existed before and on 26 March 2009. In cases where a prior permanent custody order includes findings of fact as to the circumstances existing at the time of the order, findings of fact in a subsequent modification order looking back to the former circumstances may be unnecessary, but when the trial court is considering a consent order in which the parties "waive[d] findings of fact and conclusions of law[,]" the trial court has no way of considering a motion for modification without considering the circumstances at the time of entry of the prior order. Of course, plaintiff could have insisted upon findings of fact and conclusions of law when he agreed to the 26 March 2009 memorandum, which would have set the "base line" circumstances for purposes of a motion to modify, but he did not. Therefore, we find no merit in plaintiff's contentions.

**[3]** In a related argument, plaintiff also contends that the trial court abused its discretion by including findings as to defendant's domestic

violence complaint, as defendant had voluntarily dismissed her Chapter 50B complaint in the 26 March 2009 memorandum and this "wiped the issues of Domestic Violence from the parties [sic] case[.]" Some of the findings of fact which plaintiff claims are barred by dismissal of the Chapter 50B complaint are as follows:

24. The parties separated after an incident of domestic violence on December 26, 2008.

25. In the midst of an argument, Father pushed Mother down the stairs, causing serious bruising. This was the only incident of assaultive conduct presented into evidence between the parties.

26. The minor child witnessed the event and was crying and distressed.

27. As Father came down the stairs, Mother called 911 and Father left the home.

. . . .

29. Mother filed a Complaint for a Domestic Violence Protective Order and obtained an ex parte Protective Order.

Plaintiff does not argue that these findings of fact are not supported by the evidence; plaintiff contends that despite evidentiary support for the findings, the trial court should not have made the findings because the separate Chapter 50B proceeding was dismissed. We also note that the trial court's 10 June 2010 order did not include any provisions of the sort which would be included in a domestic violence protective order entered pursuant to N.C. Gen. Stat. §§ 50B-2 or 50B-3, but addressed only child custody and support.

Plaintiff's argument confuses issues of pleading and procedure with factual circumstances relevant to the child's best interest. Regardless of the defendant's agreement to dismiss her Chapter 50B claim, "acts of domestic violence between the parties" are one of the factors the trial court is to consider pursuant to N.C. Gen. Stat. § 50-13.2(a) in making findings as to the best interest of the child. The trial court's highest duty in a child custody determination is the consideration of the child's interests, not the parents', and if the trial court finds that domestic violence has occurred which affects the child, it is bound to consider this fact in making its custody determination.

The welfare or best interest of the child is always to be treated as the paramount consideration, to which even parental love must

yield, and wide discretionary power is necessarily vested in the trial court in reaching decisions in particular cases. *Griffin v. Griffin*, 237 N.C. 404, 75 S.E.2d 133; *Walker v. Walker*, 224 N.C. 751, 32 S.E.2d 318. "The welfare of the child in controversies involving custody is the polar star by which the courts must be guided in awarding custody." *Thomas v. Thomas*, 259 N.C. 461, 130 S.E.2d 871, *quoting Kovacs v. Brewer*, 245 N.C. 630, 97 S.E.2d 96.

*Wilson v. Wilson*, 269 N.C. 676, 678, 153 S.E.2d 349, 351 (1967). The trial court made appropriate findings, pursuant to N.C. Gen. Stat. § 50-13.2(a), as to the conditions that existed at the time of the 26 March 2009 memorandum, which included the domestic violence which occurred in the presence of the child. Accordingly, we find no abuse of discretion and this argument is overruled.

[4] Plaintiff also argues that "[n]one of [the trial court's] modifications were contemplated by the Plaintiff at the time he filed his Motion to Modify. Clearly the court was without authority to make such wholesale changes to the prior custody order without notice that the Court had intended to go beyond the Plaintiff's filed Motion to Modify Custody." However, contrary to plaintiff's contention, "[o]ur trial courts are vested with broad discretion in child custody matters[,]" *Mitchell v. Mitchell*, 199 N.C. App. 392, 405, 681 S.E.2d 520, 529 (2009) (citation omitted), and in the context of a request for a modification of child custody, the trial court is not limited to the allegations and requests made by the moving party but "[t]he welfare of the children is the determining factor in the custody proceedings[.]" *In re Custody of Poole*, 8 N.C. App. 25, 29, 173 S.E.2d 545, 548 (1970). When a party files a motion to modify custody, if the trial court finds that a substantial change in circumstances affecting the best interests of the child has occurred and thus modification is needed, the trial court is not limited by the specific modifications as requested by any party but may make any modifications which it determines are supported by evidence and are in the best interest of the child. Accordingly, we find no abuse of discretion and plaintiff's argument is overruled.

## IV. Imputing Income for Child Support

[5] Next, plaintiff argues that in the 10 June 2010 order, "the failure of the trial court to impute income to the plaintiff for purposes of establishing child support was an abuse of discretion." Defendant counters that the trial court properly concluded that income should not be imputed to defendant as the findings show that she "did not act

in bad faith and had sought higher paying employment." This Court has stated that

> [c]hild support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a "determination of whether there was a clear abuse of discretion." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Under this standard of review, the trial court's ruling "will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.*

*Biggs v. Greer*, 136 N.C. App. 294, 296-97, 524 S.E.2d 577, 581 (2000). "The trial court must make sufficient findings of fact to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Metz v. Metz*, ___ N.C. App. ___, ___, 711 S.E.2d 737, 740 (2011) (citation omitted). Plaintiff makes no challenge to the trial court's findings of fact and therefore, they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). However, plaintiff points us to findings of fact 95, 98, 99, and 100 and argues that the findings of fact showed that defendant "was intentionally depressing her income" and it was an abuse of the trial court's discretion for the trial court to make "no conclusions other than the statement 'but income cannot be imputed to the [defendant].' "

This Court has set forth the legal and factual bases for imputation of income for purposes of child support as follows:

> [n]ormally, a party's ability to pay child support "is determined by that [party's] income at the time the award is made." *Atwell v. Atwell*, 74 N.C. App. 231, 235, 328 S.E.2d 47, 50 (1985). *See also Askew v. Askew*, 119 N.C. App. 242, 458 S.E.2d 217 (1995). However, capacity to earn may be the basis for an award where the party "deliberately depressed his income or deliberately acted in disregard of his obligation to provide support." *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997) (citing *Askew, id.*). *See also Schroader v. Schroader*, 120 N.C. App. 790, 463 S.E.2d 790 (1995). Before earning capacity may be used as the basis of an award, there must be a showing that the actions which reduced the party's income were taken in bad faith, to avoid family responsibilities. *Bowers v. Bowers*, 141 N.C. App. 729, 732, 541 S.E.2d 508, 510 (2001) (noting rule that absent a finding that defendant deliberately suppressed his income to avoid his support obligation, the trial court could not employ

defendant's earning capacity in determining child support); *Sharpe*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (holding that father's failure to look for higher paying job after his position was eliminated was not deliberate suppression of income or other bad faith, and thus, his earning capacity could not be used to impute income to him for determining child support); *see also Cook v. Cook*, 159 N.C. App. 657, 583 S.E.2d 696 (2003), and *King v. King*, 153 N.C. App. 181, 185, 568 S.E.2d 864, 866 (2002). . . . [In imputation of income cases] "the dispositive issue is whether a party is motivated by a desire to avoid his reasonable support obligations." *Wolf v. Wolf*, 151 N.C. App. 523, 527, 566 S.E.2d 516, 519 (2002) (holding the trial court did not err in imputing income where defendant voluntarily remained unemployed "in conscious and reckless disregard" of his duty to provide support to his children); *Wachacha v. Wachacha*, 38 N.C. App. 504, 508, 248 S.E.2d 375, 378 (1978) (holding there was insufficient evidence to support the trial court's decision to impute income where, although defendant voluntarily surrendered his job so that he could return to college, he arranged to meet his support and alimony obligations from his income under the GI bill).

*Pataky v. Pataky*, 160 N.C. App. 289, 306-07, 585 S.E.2d 404, 415-16 (2003), *affirm per curium*, 359 N.C. 65, 602 S.E.2d 360 (2004).

In addition to findings of fact 95, 98, 99, and 100, the trial court made the following findings as to defendant's income and earning capacity:

95. Mother initially picked up more hours as a hostess at McCormick and Schmick's after separation and asked friends to care for [Mary][1] as a favor.

96. After Mother began receiving [post separation support] and temporary child support payments, she would employ friends to watch [Mary] while she worked.

97. Mother ended up paying the same amount for child care, $10/hr, as she made at her hostess job.

98. She no longer works extra shifts and is scheduled to hostess for roughly 10-15 hours every other weekend.

99. Mother told Father that she was planning to decrease her work hours at the restaurant over time so that he would have to

---

1. The minor child is identified by a pseudonym.

pay her more child support. Mother admits she made this statement in order to lash out at Father.

100. The Court nonetheless finds that Mother's threat in this regard was an idle one. Whether child support is comput[ed] using Mother's current gross income of $430/month or whether it is computed using her previous gross monthly income around $750/month, when she was working extra shifts back in the Spring of 2009 yields little difference in Father's ultimate child support obligation.

101. Mother has never earned more than minimal income throughout her time in the United States.

102. Mother is highly intelligent and has a degree in Psychology.

103. Mother has sought work extensively during the recession but has not yet secured more lucrative work.

104. Father's counsel argues that Mother is intentionally depressing her income but there is no evidence that a higher salaried job is available for her.

105. Father's counsel argued Mother had not spent sufficient time seeking work but the Court finds that Mother has in fact made significant efforts in that respect.

106. The Court finds that Mother has not yet been successful in finding a higher-salaried position but that she desires to do so.

107. The only available job where Mother could be working more hours is the restaurant where she currently works. If she returned to her previous schedule from the Spring of 2009, Mother could work every weekend and make close to $750/month.

108. This commitment would result in Mother having to sacrifice every weekend with [Mary] and in having to pay for child care on alternate weeks in the same amount she would be earning.

Based on these findings the trial court concluded that "both Father and Mother owe a duty of support to the minor children, [sic] but income cannot be imputed to Mother[.]" As the findings show that defendant's reduction in income was not made in "bad faith" or "motivated by a desire to avoid [her] reasonable support obligations[,]" the trial court had no basis to impute income to defendant. *See Pataky*, 160 N.C. App. at 307, 585 S.E.2d at 415-16. Accordingly, the trial court's

findings of fact support its conclusions of law. Therefore, we find no abuse of discretion and plaintiff's argument is overruled.

## V. Extraordinary Expenses

[6] Plaintiff contends that "the trial court abused its discretion by entering the child support order" as the trial court "went beyond the Child Support Guides [sic] and added addition [sic] support require-ments to pay 97 percent of the minor child's tuition, 97 percent of any unspecified work related day care expense incurred by the appel-lant[,]" and "unspecified . . . summer camp outside of the guidelines." Defendant argues that the trial did not abuse its discretion in order-ing plaintiff to pay these expenses. The trial court made the following relevant findings of fact:

111. [Mary]'s tuition at St. Johns is $320/month. Mother has received a scholarship up to trial, although it is unclear whether [Mary] will or should still qualify for scholarship given Father's income. The parents will no longer incur this expense once [Mary] begins public school. Accordingly, the Court will not enter the St. John's tuition on the Worksheet A as an extraordinary expense and instead orders Father to pay 97% of [Mary]'s tuition at St. Johns directly, with Mother responsible for 3%, in addition to his base child support obligation to Mother, until the parents (and CMS' evaluation regarding [Mary]'s readiness for Pre-K) determine that [Mary] is ready to begin public school.

112. Mother incurs work-related childcare costs as the rate of $10/hour for some weekends when she works that do not fall on Father's alternate weekend visitation. In the event that Mother incurs such work-related childcare costs, she shall submit a receipt documenting those costs to Father, who shall reimburse Mother for 97% of these expenses within 14 days of the presenta-tion of the receipt.

113. Based upon Worksheet A of the North Carolina Child Support Guidelines, Father's monthly child support obligation is $1227.76. He should additionally pay 97% of [Mary]'s tuition at St. John's to cover [Mary]'s summer and 2010-11 school year, if [Mary] does not continue to qualify for scholarship and for as long as she incurs those expenses prior to entering public school.

114. In the event [Mary] attends summer camps, the parents shall share the reasonable costs of summer camp with Father paying for 97% and Mother paying for 3%.

Based on these findings the trial court concluded that

> it would be in the best interest of the minor child for Father to pay Guideline child support for the minor child as set forth herein, which is a reasonable amount of child support based upon the gross income of the parties, the cost of work-related child care expenses, and health insurance premiums paid on behalf of the minor child by Father.

N.C. Gen. Stat. § 50-13.4(c) (2009) states that "[t]he court shall determine the amount of child support payments by applying the presumptive guidelines[.]" The North Carolina Child Support Guidelines allow the court to add to the parties' basic child support obligation based on certain extraordinary expenses, as follows:

> Other extraordinary child-related expenses (including 1. expenses related to special or private elementary or secondary schools to meet a child's particular educational needs, and 2. Expenses for transporting the child between the parents' homes) may be added to the basic child support obligation and ordered paid by the parents in proportion to their respective incomes if the court determines the expenses are reasonable, necessary, and in the child's best interest.

N.C. Child Support Guidelines, 2006 Ann. R. N.C. 53. This Court has further stated that

> "[d]etermination of what constitutes an extraordinary expense is . . . within the discretion of the trial court," *Mackins v. Mackins*, 114 N.C. App. 538, 549, 442 S.E.2d 352, 359, *disc. review denied*, 337 N.C. 694, 448 S.E.2d 527 (1994). Based upon the [above Guideline language], "the court may, in its discretion, make adjustments [in the Guideline amounts] for extraordinary expenses." *Id.* However, incorporation of such adjustments into a child support award does not constitute deviation from the Guidelines, but rather is deemed a discretionary adjustment to the presumptive amounts set forth in the Guidelines. *See* 29 Fam. L. Q. 775, 834 (1996) (citing *Mackins*, 114 N.C. App. at 548-50, 442 S.E.2d at 358-59, as holding that "court's order that defendant pay his share of costs of tutoring, orthodontics, psychologists, and summer camp was not a deviation, but rather a discretionary determination to adjust the guideline amount for extraordinary expenses"). In short, absent a party's request for deviation, the trial court is not required to set forth findings of fact related to

the child's needs and the non-custodial parent's ability to pay extraordinary expenses.

*Biggs*, 136 N.C. App. at 298, 524 S.E.2d at 581-82 (emphasis in original). Even though the guidelines note two specific extraordinary expenses, school and travel, as previously noted by this Court, "the language of the [above guidelines] 'contemplates that the list of extraordinary expenses . . . is not exhaustive of the expenses that can be included.'" *Doan v. Doan*, 156 N.C. App. 570, 574, 577 S.E.2d 146, 149-50 (2003) (quoting *Mackins*, 114 N.C. App. at 549, 442 S.E.2d at 359). Here, the trial court provided for extraordinary expenses for school tuition, work-related child care costs, and costs for summer camp. First, there is no indication in the record that either party requested a deviation from the guidelines and the trial court in fact did not deviate from the guidelines in its child support order. Thus, findings to support a deviation from the guidelines were not required, *see Biggs*, 136 N.C. App. at 298, 524 S.E.2d at 582, but even so the trial court made findings in support of its decision. The guidelines specifically allow for extraordinary expenses as to "private elementary or secondary schools[;]" and this Court has previously found that extraordinary expenses could include camp fees. *See Mackins*, 114 N.C. App. at 550, 442 S.E.2d at 359 (finding no abuse of discretion in the trial court "ordering defendant to pay for the summer camp expenses" as an extraordinary expense). As to work-related child support, we note that a trial court can consider expenses for child care in its support determination, *see* N.C. Gen. Stat. § 50-13.4(c), and the trial court gave a detailed explanation for this award, noting that defendant was paying as much in child care as she was earning while working at her part-time job. Also, the trial court ordered each party to pay a percentage of these extraordinary expenses based on the party's share of the combined gross incomes pursuant to the guidelines. *See Mackins*, 114 N.C. App. at 550, 442 S.E.2d at 359 (noting "that the trial court properly apportioned payment of the [extraordinary] psychological expenses pursuant to the child support guidelines of defendant's seventy-seven percent share."). Accordingly, the trial court's findings of fact support its conclusions of law and plaintiff's argument is overruled.

## VI. Bias

[7] Next, plaintiff argues that the trial court's finding of fact 93 shows that it "was harboring resentment towards" him and because the trial court remained quiet during the trial regarding her observa-

tions, he did not have a chance to file a motion asking her to recuse. Plaintiff concludes that finding 93 "alone is sufficient for this Court to determine that [plaintiff] has been denied a fair trial on his motion to modify the 26 march [sic] 2010 Memorandum and Judgment[.]" Defendant counters that as the finder of fact, the trial court is required to make observations of the parties and committed no abuse of discretion.

The relevant finding states as follows:

> 93. Father's facial expressions during trial were somewhat troubling to the Court. He frequently glared at Mother during her cross examination and particularly reveled when his attorney was being aggressive to Mother in her questioning or through her body language. Father's angry expression made the judge feel uncomfortable. It is clear Father still harbors deep anger regarding Mother's infidelity during the marriage and still desires to strike back.

It is well-settled that "when acting as the finder of fact, the trial court has the opportunity to observe the demeanor of the witnesses and determine their credibility, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *Yurek v. Shaffer*, 198 N.C. App. 67, 80, 678 S.E.2d 738, 747 (2009) (citation omitted). Further, "[o]ur trial courts are vested with broad discretion in child custody matters. The discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to 'detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citation omitted). In *Matter of Oghenekevebe*, this Court held that the trial court did not err by making findings as to the respondent's attitude that she was being persecuted based upon observations of her testimony at trial:

> Based on respondent's testimony, the trial judge determined that respondent dismisses any theory with which she does not agree, and additionally claims that those who disagree with her are persecuting her because of her race. Sorting through such allegations is a task best left to the determination of the trial court. The function of trial judges in nonjury trials is to weigh and determine the credibility of a witness. *Ingle v. Ingle*, 42 N.C. App. 365, 368, 256 S.E.2d 532, 534 (1979). The demeanor of a witness on the stand is always in evidence. *State v. Mullis*, 233 N.C. 542, 544, 64 S.E.2d 656, 657 (1951). All of the findings of fact regarding respond-

ent's in-court demeanor, attitude, and credibility, including her willingness to reunite herself with her child, are left to the trial judge's discretion. Therefore, any of the findings of fact regarding the demeanor of any of the witnesses are properly left to the determination of the trial judge, since she had the opportunity to observe the witnesses.

*Oghenekevebe*, 123 N.C. App. 434, 440-41, 473 S.E.2d 393, 398-99 (1996). Here, the trial court made findings regarding plaintiff's attitude of anger and vengefulness toward defendant, based upon her observations throughout the trial. Findings as to a party's demeanor and attitude, such as finding No. 93, are not only proper but can actually be quite helpful to both this Court, which relies on the "printed record" and does not have the opportunity to observe the parties or witnesses, and also to the trial court, which in the future might be required to rule upon another modification of custody, as this finding establishes a base line as to one of the circumstances existing at the time of the 10 June 2010 order. Therefore, it was the trial court's duty as the finder of fact to observe the demeanor of all of the witnesses, including plaintiff, during the trial and to make appropriate findings of fact as to these observations as it saw fit. Plaintiff cites no law for the proposition that a trial court is required to inform parties of its observations and thoughts as to the demeanor of the parties or other witnesses during a trial, and it would, as a general rule, be entirely inappropriate for the trial court to do so. Accordingly, plaintiff's argument is overruled.

## VII. Attorney's Fees

[8] Plaintiff's next two arguments contend that the trial court made specific errors in its orders awarding attorney's fees. In his notice of appeal, filed on 13 July 2010, plaintiff appealed from "the Memorandum of Judgment/Order entered by Rebecca Thorn Tin, District Court Judge, entered on July 2010 [sic] that awarded Defendant attorney fees in this Matter." However, our record does not include any order entered in July 2010, much less an order for attorney fees. The attorney fee orders which plaintiff challenges were actually entered on 1 October 2010. Plaintiff did not give proper notice of appeal as to the attorney fee orders, since the notice of appeal was filed prior to entry of the orders, *see* N.C.R. App. P 3(c), but the attorney fee orders present another issue which was not raised by the parties. We have noted that

[t]he issue of jurisdiction over the subject matter of an action may be raised at any time during the proceedings, including on appeal. *In re T.R.P.*, 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006). This Court is required to dismiss an appeal *ex mero motu* when it determines the lower court was without jurisdiction to decide the issues. *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 86 (1986).

*McClure v. County of Jackson*, 185 N.C. App. 462, 469, 648 S.E.2d 546, 550 (2007). After plaintiff filed notice of appeal on 13 July 2010, the trial court was divested of jurisdiction to enter orders for attorney fees pending the completion of this appeal. The fact that the trial court reserved the issue of attorney fees for later hearing does not give the trial court jurisdiction to enter the orders after notice of appeal was filed. In *McClure*, this Court thoroughly considered the trial court's jurisdiction to enter an award of attorney fees after the notice of appeal and held that

[i]t is fundamental that a court cannot create jurisdiction where none exists. *See In re McKinney*, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003). N.C. Gen. Stat. § 1–294 specifically divests the trial court of jurisdiction unless it is a matter "not affected by the judgment appealed from." When, as in the instant case, the award of attorney's fees was based upon the plaintiff being the "prevailing party" in the proceedings, the exception set forth in N.C. Gen. Stat. § 1–294 is not applicable.

While we understand that the interests of judicial economy would clearly be better served by allowing the trial court to enter an order on attorney's fees and then having the matter come up to the appellate courts as a single appeal, we cannot create jurisdiction for the trial court to enter the award of attorney's fees in violation of N.C. Gen. Stat. § 1–294.

*Id.* at 471, 648 S.E.2d at 551.

We must therefore vacate the attorney fee orders entered on 1 October 2010, as the trial court did not have jurisdiction to enter these orders. We remand the issue of attorney fees to the trial court for reconsideration.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges GEER and THIGPEN concur.