MACKINS v. MACKINS

[114 N.C. App. 538 (1994)]

---

MAXINE R. MACKINS v. ALONZO MACKINS, JR.

No. 9326SC683

(Filed 3 May 1994)

**1. Divorce and Separation § 427 (NCI4th) — child support order — modification — effective date based on filing date — no retroactive modification**

Based on the holding in *Hill v. Hill*, 335 N.C. 140, and on the plain language of N.C.G.S. § 50-13.10(a), a trial court has the discretion to make a modification of a child support order effective from the date a petition to modify is filed as to support obligations which accrue after such date. There-

MACKINS v. MACKINS

[114 N.C. App. 538 (1994)]

fore, where plaintiff filed a motion to modify child support on 27 March 1991, the trial court's order entered on 18 February 1993 awarding increased child support effective 1 April 1991, and thereby requiring defendant to pay an amount representing increased child support payments for the months of April 1991 through February 1993, was not a retroactive modification.

**Am Jur 2d, Divorce and Separation §§ 1078 et seq.**

**Divorce: power of court to modify decree for support of child which was based on agreement of parties. 61 ALR3d 657.**

2. **Divorce and Separation § 446 (NCI4th) — child support — defendant's income — sufficiency of evidence to support findings**

Evidence was sufficient to support the trial court's finding that defendant had an average gross monthly income of $7,340.00.

**Am Jur 2d, Divorce and Separation §§ 1078 et seq.**

3. **Divorce and Separation § 395 (NCI4th) — child support — extraordinary expenses — court's discretion**

With regard to child support, the trial court has the discretion to determine what expenses constitute extraordinary expenses, the amount of these expenses, and, with the exception of payments for professional counseling or psychiatric therapy which must be apportioned in the same manner as the basic child support obligation, how the expenses are to be apportioned between the parties.

**Am Jur 2d, Divorce and Separation §§ 1039 et seq.**

**What constitutes "extraordinary" or similar medical or dental expenses for purposes of divorce decree requiring one parent to pay such expenses for child in custody of other parent. 39 ALR4th 502.**

4. **Divorce and Separation § 398 (NCI4th) — child support — specific extraordinary expenses — award proper**

The trial court did not abuse its discretion in ordering defendant to pay 77% of the actual cost for (1) Sylvan Learning Center while his children attended there, (2) a psychologist, (3) summer camp expenses, which expenses were not to exceed $1,700 per child per year, and (4) orthodontic expenses.

**Am Jur 2d, Divorce and Separation §§ 1039 et seq.**

**What constitutes "extraordinary" or similar medical or dental expenses for purposes of divorce decree requiring one parent to pay such expenses for child in custody of other parent. 39 ALR4th 502.**

Judge WYNN concurring.

Appeal by defendant from order entered 18 February 1993 by Judge Jane V. Harper in Mecklenburg County District Court. Heard in the Court of Appeals 22 March 1994.

Defendant Alonzo Mackins, Jr. and Plaintiff Maxine R. Mackins were married on 25 July 1979 and separated on 28 February 1984. Two minor children were born of this marriage, MacKenzie Mackins, born 11 November 1980, and Damion Alonzo Mackins born 14 March 1979. On 14 August 1984, plaintiff filed an action seeking custody of these minor children, child support and attorneys fees. On 18 January 1985, Judge Robert P. Johnston entered an order for temporary child support finding that defendant's gross income was $3,490.03 per month and that plaintiff was entitled to temporary child support, and ordering defendant to pay $872.50 per month in child support.

Thereafter, on 5 June 1986, Judge W. Terry Sherrill entered an order finding that defendant had a reasonable gross income of not less than $3,200 per month and that plaintiff was entitled to child support, and ordering defendant to pay plaintiff $800 per month in child support. On 27 March 1991, plaintiff filed a motion for increased child support based on a substantial change of circumstances, and on 3 December 1992, plaintiff filed a motion for imposition of sanctions for defendant's failure to respond to a court order compelling defendant's response to interrogatories and production of documents.

After a hearing, on 18 February 1993, Judge Jane V. Harper entered an order finding that defendant has an average gross monthly income of $7,340 per month and concluding that the needs of the children have increased substantially since 1985. Further, Judge Harper ordered defendant to pay to plaintiff $1,230 per month in child support effective 1 April 1991, to pay $9,890 as the sum representing the increased amount due for April, 1991 through February, 1993, and extraordinary expenses. Additionally, Judge Harper ordered defendant to pay $1,200 to plaintiff's attorney as partial attorneys fees. From this order, defendant appeals.

MACKINS v. MACKINS

[114 N.C. App. 538 (1994)]

*William G. Robinson for plaintiff-appellee.*

*Helms, Cannon, Hamel & Henderson, P.A., by Thomas R. Cannon and William Brady Hamel, for defendant-appellant.*

ORR, Judge.

This appeal involves modification of an order for child support. On 5 June 1986, an order for child support was entered ordering defendant to pay plaintiff $800 per month in child support in two monthly installments of $400 each, "with the first installment due and payable on the 1st day of May, 1986, and a like payment due and payable on the 15th day of May, 1986, and similar payments to continue each month thereafter."

On 27 March 1991, plaintiff filed a motion for increased child support based on a substantial change of circumstances. This action came on to be heard during the 4 January 1993 civil term of Mecklenburg County District Court. Subsequently, the trial court found that "[b]oth the incomes of the [p]laintiff and the [d]efendant have increased substantially since the prior order entered in this matter and also as of the filing of this motion [on] March 27, 1991" and that the "needs and expenses of the minor children have increased substantially since 1985." Based on these findings, and upon findings as to the incomes of both plaintiff and defendant, the trial court found that the "[p]laintiff's motion for an increase in child support should be allowed as of the time of filing of this motion . . . ."

The trial court entered its order on 18 February 1993 ordering that

> [d]efendant shall pay the sum of One Thousand Two Hundred, Thirty Dollars ($1,230.00) per month in to the office of the Clerk of Superior Court of Mecklenburg County as child support, said sum payable in two payments per month, with a payment of $615.00 beginning April 1, 1991 and a like payment of $615.00 on April 15, 1991 and similar payments to continue each month thereafter pending further orders of this Court.

Further, the trial court determined and ordered that

> [a]s the effective date of the time the payments are to begin under this order has passed, the [d]efendant shall pay the difference of $9,890.00 into the office of the Clerk of Superior

MACKINS v. MACKINS

[114 N.C. App. 538 (1994)]

Court within 90 days from date. The difference of $9,890.00 is the sum between what the [d]efendant was supposed to be paying under the previous order in the amount of $430.00 per month for the months of April, 1991, through February, 1993 (23 months).

I.

[1] On appeal, defendant contends that the trial court erred in ordering him to pay retroactive child support in the amount of $9,890 in the absence of any evidence of an emergency situation or a finding as to actual past expenses. Based on our finding that the trial court's order was not a retroactive modification of child support, we disagree.

Under N.C. Gen. Stat. § 50-13.7, "[a]n order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested subject to the limitations of G.S. 50-13.10." N.C. Gen. Stat. § 50-13.10 states in pertinent part:

(a) Each past due child support payment is vested when it accrues and may not thereafter be vacated, reduced, or otherwise modified in any way for any reason, in this State or any other state, except that a child support obligation may be modified as otherwise provided by law, and a vested past due payment is to that extent subject to divestment, if, but only if, a written motion is filed, and due notice is given to all parties either:

(1) Before the payment is due or

(2) If the moving party is precluded by physical disability, mental incapacity, indigency, misrepresentation of another party, or other compelling reason from filing a motion before the payment is due, then promptly after the moving party is no longer so precluded.

Thus, under N.C. Gen. Stat. § 50-13.10, a child support payment vests when it accrues, and "[a] vested past due payment is subject to divestment only if a party filed a written motion with the court and gave due notice to all parties before the payment was due." *Van Nynatten v. Van Nynatten*, 113 N.C. App. 142, 145, 438 S.E.2d 417, 418 (1993). "Notice and filing may occur after the payment

MACKINS v. MACKINS

[114 N.C. App. 538 (1994)]

is due only if the moving party is precluded 'by physical disability, mental incapacity, indigency, misrepresentation of another party, or other compelling reason' from filing a motion before the payment is due." *Id.* (citation omitted).

In the present case, a child support order was entered on 5 June 1986 ordering defendant to pay child support in the amount of $800 per month. Under this order, defendant's child support obligation became due and payable in two $400 installments on the first and fifteenth of each month. Thus, pursuant to N.C. Gen. Stat. § 50-13.10(a), defendant's child support obligation under the 5 June 1986 order vested after the first and fifteenth of every month, and absent the filing of a motion, these payments could not be modified. *See, e.g., Van Nynatten,* 113 N.C. App. 142, 438 S.E.2d 417; *Pieper v. Pieper,* 108 N.C. App. 722, 425 S.E.2d 435 (1993); *Craig v. Craig,* 103 N.C. App. 615, 406 S.E.2d 656 (1991).

Unlike the plaintiffs in the cases cited above, however, on 27 March 1991, plaintiff in the present case filed a motion for an increase in child support based on changed circumstances pursuant to N.C. Gen. Stat. § 50-13.7. Thus, any child support payments which accrued after the filing of this motion could be subject to modification as provided by law.

The law specifically provides that child support payments may not be reduced retroactively, absent a compelling reason. *Van Nynatten,* 113 N.C. App. at 144, 438 S.E.2d at 418. Although we have not specifically addressed whether a child support payment may be increased retroactively, the law seems to be that a child support payment may not be retroactively increased without evidence of some emergency situation that required the expenditure of sums in excess of the amount of child support paid. *See Fuchs v. Fuchs,* 260 N.C. 635, 133 S.E.2d 487 (1963). The present case does not require us, however, to determine whether a retroactive increase in child support payments is permissible, because, based on the recent holding in *Hill v. Hill,* 335 N.C. 140, 435 S.E.2d 766 (1993), we find that the increase in child support from April, 1991 through February, 1993 was not a retroactive modification of child support.

In *Hill,* plaintiff and defendant were married on 14 September 1951 and separated on 1 May 1983. On 4 August 1983, the parties entered into a court approved order in South Carolina in which they settled the issues of alimony, child custody, and distribution of marital assets. Under this order, defendant was obligated to pay

plaintiff alimony payments of $900 per month. The parties were divorced, and plaintiff registered the South Carolina support order in Mecklenburg County, North Carolina on 18 December 1985. On 21 December 1987, plaintiff filed a motion seeking a judgment for alimony arrearages, an increase in the amount of alimony and further modifications of the 1983 support order.

Subsequently, the motion was scheduled to be heard on 9 February 1988 but was not actually heard until 28 September 1988. By order entered 24 July 1990, the trial court, among other things, increased plaintiff's alimony award from $900 to $1,500 per month effective February 1988 and thereafter monthly. The trial court further ordered:

> The Court is informed as of June 29, 1990 that [d]efendant has continued to make alimony payments at the rate of $900.00 per month from February 1988 through the month of June 1990. An arrearage has thus accumulated for a period of 29 months at a rate of $600.00 per month, creating a principal sum due of $17,400.00 in alimony arrearages. Judgment is rendered in favor of [p]laintiff against [d]efendant in that amount plus interest due on each payment ($600.00 per month) from the due date (the first day of each month commencing with the month of February 1988). The Court further directs that this arrearage of $17,400.00 plus accrued interest on each payment shall be liquidated in full by [d]efendant on or before December 1, 1990.

*Id.* at 142-43, 435 S.E.2d at 767. Defendant appealed to this Court, and this Court unanimously affirmed the trial court's order insofar as it increased the alimony award; a majority of this Court concluded, however, that the trial court was without the authority to make the increase effective February 1988 and reversed only this aspect of the trial court's order, with one judge dissenting on this issue. Defendant appealed to the Supreme Court.

The Supreme Court held that this Court erred in reversing the aspect of the trial court's order making the increase in alimony effective February 1988 and reinstated the order of the trial court. In reversing the decision of this Court, the Supreme Court stated:

> We need not consider whether this state's law authorizes retroactive modifications of alimony because we conclude the trial court's order modifying alimony from the date the matter

was first noticed for hearing is not a retroactive modification. While this issue has not been addressed previously by this Court, we are persuaded by the rule which prevails in other jurisdictions which states:

> Orders which modify alimony or support payments effective as of the date of the petition or subsequent thereto but prior to the date of the order of modification are not subject to the criticism that they have retroactive effect which destroys vested rights. This is true because the modification and the whole proceeding in which it is made are referable to the date of the filing of the petition and any change effective as of that date cannot be said to be retroactive.

*Id.* at 143-44, 435 S.E.2d at 768 (citations omitted).

The Court went on to favorably cite language from the Court of Appeals of New York that

> [ [t]he purpose for the hearing on plaintiff's motion is] to establish the facts upon which the court could act with caution and with justice. So far as the power of the court is concerned, those facts are deemed to have been established as of the date when the motion was made returnable . . . and the order could properly take effect as of that date. Were this not so, a defendant, by repeated adjournments for one excuse or another, might delay [the plaintiff] in procuring . . . the relief and help which [the plaintiff] should have, owing to changed conditions and circumstances.

*Id.* at 144, 435 S.E.2d at 768 (quoting *Harris v. Harris*, 259 N.Y. 334, 336-37, 182 N.E. 7, 8 (1932) ) (bracketed language in original). Subsequently, the Court concluded that "[b]ecause a trial court has the discretion to modify an alimony award as of the date the petition to modify is filed, '[i]t follows, then, a trial court has discretion to make the modification effective as of any ensuing date after a petition to modify is filed.' " *Hill*, 335 N.C. at 145, 435 S.E.2d at 768 (citation omitted). The trial court had ordered the alimony increase effective February 1988. Based on its conclusions, the Supreme Court held, "[b]ecause this date was subsequent to the 21 December 1987 filing of plaintiff's motion, the trial court's order was not a retroactive modification." *Id.* Based on this holding, our Supreme Court reversed this Court's decision and reinstated

the trial court's decision making the increase in defendant's alimony payments effective February 1988.

The defendant in *Hill* argued, however, that *Fuchs* applied to prevent the court from increasing the alimony payments from a point prior to the entry of the order increasing the alimony. Our Supreme Court stated:

> *Fuchs* involved the modification of a child support order. The motion for modification was filed 11 June 1963. The trial court ordered an increase in the amount of child support effective February 1963, five months before the motion was filed. This Court held that "the order making the increased allowance retroactive to and including February 1963, without evidence of some emergency situation that required the expenditure of sums in excess of the amounts paid by the plaintiff for the support of his minor children, is neither warranted in law nor equity." 260 N.C. at 641, 133 S.E.2d at 492. *Fuchs* thus dealt with a true retroactive modification, i.e., a modification ordered to take place before the motion for modification was filed. Here, as we have shown, the modification was not retroactive because it was made to take effect on a date subsequent to the date the motion for modification was made.

*Id.* at 145, 435 S.E.2d at 768-69.

In the present case, plaintiff filed her motion to modify the child support payments on 27 March 1991. The trial court entered an order on 18 February 1993 increasing defendant's child support obligation from $800 per month to $1,230 per month effective 1 April 1991. The trial court noted that on the date this order was entered, the effective date of the time the payments were to begin had passed and ordered defendant to pay $9,890 to the Clerk of Superior Court representing the increase in child support payments for the months of April, 1991 through February, 1993. Because April, 1991 was subsequent to the 27 March 1991 filing of plaintiff's motion, the trial court's order was not a retroactive modification.

Further, just as the trial court has the discretion to modify an alimony award as of the date the petition to modify is filed, the trial court also has the discretion to modify a child support order as of the date the petition to modify is filed. Thus, based on the holding in *Hill* and on the plain language of N.C. Gen. Stat. § 50-13.10(a), we conclude that a trial court has the discretion

to make a modification of a child support order effective from the date a petition to modify is filed as to support obligations that accrue after such date.

Because the April, 1991 support obligation did not accrue until after the 27 March 1991 petition was filed, it was not a violation of N.C. Gen. Stat. § 50-13.10(a) to modify the support obligation from April, 1991. Accordingly, we find that the trial court did not err in modifying defendant's child support obligation effective April, 1991.

II.

[2]  Next, defendant contends that the trial court erred in finding that defendant has an average gross monthly income of $7,340. We disagree.

"This Court is bound by the trial court's findings where there is competent evidence to support them. . . . 'If different inferences may be drawn from the evidence, [the judge sitting without a jury] determines which inferences shall be drawn . . .', and the findings are binding on the appellate court." *Monds v. Monds*, 46 N.C. App. 301, 302, 264 S.E.2d 750, 751 (1980) (bracketed language in original) (citations omitted).

In the present case, the trial court found that plaintiff filed this motion in March, 1991, and in May, 1991, the parties verbally agreed to an order increasing child support. The trial court found that at that time, defendant represented through his attorney that his gross income per month was not less than $7,500. The defendant increased child support on that basis for several months but did not, however, sign the agreement.

Subsequently, the trial court found that defendant was employed "at the bonding business he owns with his family." The court also found that the bonding business had purchased a Jaguar automobile for defendant's use with payments of $1,106 per month, that defendant had purchased a $284,000 home to reside in and pays a monthly mortgage of $2,100, with the bonding business paying $600.00 and defendant paying $1,500, that evidence existed to show that defendant removes some cash from the business for his personal use, and that defendant deposited into his personal checking account the sum of $73,407.23 for ten months in 1992. Our review of the evidence shows that these findings were all supported by competent evidence.

MACKINS v. MACKINS

[114 N.C. App. 538 (1994)]

Based on these findings, the trial court found that defendant has an average gross monthly income of $7,340 per month. We conclude that the findings as set out above are competent to support this finding.

Defendant argues, however, that his testimony that he had a gross monthly income for the first eleven months of 1992 of $3,144.83 was uncontradicted and that the trial court erred, therefore in finding that his gross monthly income was $7,340 per month. We disagree.

Where the trial judge sits as a jury and " 'where different *reasonable* inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge.' " *Simon v. Mock*, 75 N.C. App. 564, 568, 331 S.E.2d 300, 303 (1985) (citation omitted) (emphasis in original). The trial judge has the authority to believe all, any, or none of defendant's testimony. *Id.* at 568-69, 331 S.E.2d at 303. Accordingly, we find defendant's argument without merit.

III.

Finally, defendant contends that the trial court erred in ordering defendant to pay child support payments in an amount more than mandated by the North Carolina Child Support Guidelines absent a finding that it was reasonably necessary to deviate from these guidelines. Because we find that the trial court did not deviate from the North Carolina Child Support Guidelines, we disagree.

As his basis for this last assignment of error, defendant excepts to the following order of the trial court:

The [d]efendant shall further pay directly to the [p]laintiff, and within 15 days after the [p]laintiff incurs additional extraordinary expenses of the children, 77% of the actual cost for Sylvan Learning Center, while the children attend there; orthodontic expenses; psychologist; and summer camp expenses. Camp expenses shall not exceed $1700 per child per year.

The North Carolina Child Support Guidelines state:

**F.  Extraordinary Expenses**

*The Court may make adjustments for extraordinary expenses and order payments for such term and in such manner as the Court deems necessary.* Extraordinary medical expenses

MACKINS v. MACKINS

[114 N.C. App. 538 (1994)]

include, but are not limited to, such costs as are reasonably necessary for orthodonture, dental treatments, asthma treatments, physical therapy and any uninsured chronic health problem. At the discretion of the Court, professional counseling or psychiatric therapy for diagnosed mental disorders may also be considered as an extraordinary medical expense. Payments for such expenses shall be apportioned in the same manner as the basic child support obligation and ordered paid as the Court deems equitable.

Other extraordinary expenses are added to the basic child support obligation. Other extraordinary expenses include:

(1) Any expenses for attending any special or private elementary or secondary schools to meet the particular educational needs of the child(ren); (2) Any expenses for transportation of the child(ren) between the homes of the parents.

(Emphasis added.) Based on this language, the court may, in its discretion, make adjustments for extraordinary expenses. *See Lawrence v. Tise*, 107 N.C. App. 140, 150, 419 S.E.2d 176, 183 (1992) (holding uninsured medical and dental expenses are to be apportioned between the parties in the discretion of the trial court).

[3] Further, the language "[e]xtraordinary medical expenses include, *but are not limited to . . .*" and "[o]ther extraordinary expenses are added to the basic child support obligation" contemplate that the list of extraordinary expenses found in this section is not exhaustive of the expenses that can be included under this section. In light of the fact that "[h]istorically our trial courts have been granted wide discretionary powers concerning domestic law cases", we conclude that the determination of what constitutes an extraordinary expense is also within the discretion of the trial court. *See White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

Thus, the trial court has the discretion to determine what expenses constitute extraordinary expenses, the amount of these expenses, and, with the exception of payments for professional counseling or psychiatric therapy which must be apportioned in the same manner as the basic child support obligation, how the expenses are to be apportioned between the parties. *See* North Carolina Child Support Guidelines; *See also Lawrence*, 107 N.C. App. at 150, 419 S.E.2d at 183. Further, "[i]t is well established

that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion." *White*, 312 N.C. at 777, 324 S.E.2d at 833.

[4] In the present case, the trial court ordered defendant to pay seventy-seven percent of the actual cost for the Sylvan Learning Center while the children attend the center, of the actual cost for orthodontic expenses, of the actual cost for a psychologist, and of the actual cost for summer camp expenses, which summer camp expenses are not to exceed $1700 per child per year. At the outset, we note that the trial court properly apportioned payment of the psychological expenses pursuant to the child support guidelines of defendant's seventy-seven percent share. We also note that the orthodontic expenses and the expenses for the psychologist are specifically provided for under the child support guidelines as extraordinary expenses.

Further, we note that the child support guidelines specifically list special educational expenses as extraordinary expenses, and under our abuse of discretion standard, we cannot say that the trial court abused its discretion in determining that expenses for a learning center for the children is an extraordinary expense. Finally, as for the camp expenses, the trial court limited the amount of total camp expenses to $1700 per child per year so that the most defendant would have to pay for summer camp would be seventy-seven percent of $1700 per child per year. In light of our standard of review, we cannot say that the trial court clearly abused its discretion in ordering defendant to pay for the summer camp expenses. Accordingly, we find that the trial court did not abuse its discretion in ordering defendant to pay seventy-seven percent of the extraordinary expenses, and defendant's final assignment of error is without merit.

Defendant also argues, however, that the order is ambiguous as to whether his portion of the summer camp expenses should not exceed $1700 per child per year or whether the total expense for summer camp should not exceed $1700 per child per year so that his portion should not exceed seventy-seven percent of $1700 per child per year. We do not agree that the order is ambiguous. The order clearly states that the total camp expenses shall not exceed $1700 per child per year, and defendant would pay seventy-seven percent of these expenses.

## MACKINS v. MACKINS

[114 N.C. App. 538 (1994)]

Accordingly, we affirm the order of the trial court.

Affirmed.

Judge WELLS concurs.

Judge WYNN concurs with a separate opinion.

Judge WYNN concurring.

I fully concur with the majority's application of *Hill v. Hill*, 335 N.C. 140, 435 S.E.2d 766 (1993) to the facts of this case. *Hill* provides that the trial court " 'has the discretion to make the modification [of an alimony award] effective as of any ensuing date after a petition to modify is filed.' " *Hill*, 335 N.C. at 145, 435 S.E.2d at 768 (quoting *Kruse v. Kruse*, 464 N.E.2d 934, 939 (Ind. App. 1984)). Such modification is not retroactive since " 'the modification and the whole proceeding in which it is made are referable to the date of the filing of the petition.' " *Id.* at 144, 435 S.E.2d at 768 (quoting *McArthur v. McArthur*, 106 So. 2d 73, 76 (Fla. 1958)). The Supreme Court reasoned that a contrary rule would encourage dilatory tactics and frustrate the changed circumstances requirement for modification of an alimony award. *Id.* I agree with the majority that the rule in *Hill* should also be applied to the modification of child support.

Trial judges, however, should exercise great discretion in setting the starting date for increases in the support award. In effect the *Hill* rule creates a liability which did not exist prior to the entry of the order of modification. An innocent party who has faithfully met all prior support obligations nonetheless may be confronted with a considerable previously undetermined debt even in the face of evidence that the party fully cooperated to obtain speedy hearing date. Moreover, since actions seeking an increase in support often do not state the amount of increase sought, the non-moving party may not have any notice as to the amount of debt exposure the party will face when the modification order is entered months and in some cases years later.

Before ordering a modification of child support, the trial court must determine the present reasonable needs of the children based upon the actual past expenditures for the children, their present reasonable expenses, and the parties' relative abilities to pay. *Greer*

*v. Greer*, 101 N.C. App. 351, 399 S.E.2d 399 (1991); *Smith v. Smith*, 89 N.C. App. 232, 365 S.E.2d 688 (1988); *Norton v. Norton*, 76 N.C. App. 213, 332 S.E.2d 724 (1985). These factors, in my opinion, should also be considered in setting the date for the modification of child support. In addition, I believe the trial court should consider whether the moving party has prosecuted the cause expeditiously and whether the non-moving party has attempted to delay the proceedings in order to avoid paying the increased support award. It should be further noted that the rationale for the *Hill* rule appears to also apply in cases where the support award is decreased. Thus, it is imperative that our courts provide expeditious hearings on motions to modify support awards to avoid unfairness to the parties.