IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-755

 Filed: 19 July 2016

Wake County, No. 10 CVD 9521

HARSHA TANKALA, Plaintiff

 v.

SHAKUNTHALA S. PITHAVADIAN, Defendant.

 Appeal by Defendant from Order entered 12 March 2015 by Judge Michael

Denning in Wake County District Court. Heard in the Court of Appeals 2 December

2015.

 Montgomery Family Law, by Charles H. Montgomery and Laura Esseesse, for
 Defendant-appellant.

 No brief filed on behalf of Plaintiff-appellee.

 INMAN, Judge.

 In this case we hold that a trial court’s order requiring the parties to

participate in a specific method of treatment within the scope of an existing

comprehensive child custody order does not modify the terms of custody and therefore

does not require a finding of changed circumstances or a motion to modify the

governing order. We also hold that a trial court’s order providing additional dates

and locations for custodial visitation not inconsistent with the governing child

custody order is not a modification of the terms of custody.
 TANKALA V. PITHAVADIAN

 Opinion of the Court

 Shakunthala S. Pithavadian (Defendant, “Mother”) appeals an Order

requiring weekend visitation between her minor child and his father, Harsha

Tankala (Plaintiff, “Father”) and ordering the parties and their child to attend a

family therapy camp if the parties and their son fail to comply with the ordered

visitation. After careful review, we affirm the trial court’s Order.

 I. Factual and Procedural Background

 Father and Mother were married on 6 March 1998 and divorced on 27 October

2003. They had one child together, Peter,1 a son born 26 July 1999, who is now

sixteen years old. The Judgment of Divorce, entered 31 October 2003 by the New

York Supreme Court, Kings County, included a stipulation of settlement covering,

among other things, child custody and child support. At the time of the stipulation,

Mother resided in New York and Father resided in Delaware. A few weeks after

entry of the divorce judgment, Mother notified Father that she was moving with Peter

to North Carolina.

 On 22 July 2004, a few days before Peter’s fifth birthday, the New York

Supreme Court, Kings County, entered an order (“the New York Custody Order”)

modifying the child custody settlement. The New York Custody Order allowed

Mother to move with Peter to Morrisville, North Carolina and granted Father

visitation with Peter on alternate weekends. The New York Custody Order also

 1 A pseudonym is used to protect the identity of the minor child.

 -2-
 TANKALA V. PITHAVADIAN

 Opinion of the Court

required Mother, at her sole cost and expense, to bring Peter to meet Father at the

airport in Baltimore, Maryland or Hartford, Connecticut, as specified by Father, and

for Father to bring Peter home, or to the homes of Father’s brothers.

 On 23 June 2010, Father filed in Wake County District Court an Amended

Petition for and Notice of Registration of Foreign Child Custody Order. The petition

asserted that Father resided in Dover, Delaware and Mother resided in Cary, North

Carolina. On 26 July 2010, which coincidentally was Peter’s eleventh birthday, the

trial court entered an order confirming registration of the New York Custody Order.

The order was served on Mother at her home address in Cary. On that same date,

Father filed motions to modify child custody, for appointment of a parenting

coordinator, and for an Order to Show Cause why Mother should not be held in

contempt for violating the New York Custody Order. On 30 July 2010, Father filed a

motion seeking a custody evaluation. Father’s motions alleged that he had not been

allowed any visitation for nearly four months and that Peter refused to visit with him

or even speak to him by phone; that Mother was “actively alienating” Peter from

Father; and that a custody evaluation was necessary to assess “the mental health

status of the parties and child.”

 On 30 July 2010, the trial court entered an Order to Appear and Show Cause,

finding probable cause that Mother had violated the terms of the New York Custody

Order and requiring Mother to appear in October 2010 regarding the contempt

 -3-
 TANKALA V. PITHAVADIAN

 Opinion of the Court

allegations. Before any further hearing, however, on 26 October 2010, the parties,

their respective counsel, and Judge Debra Sasser signed consent orders for a custody

evaluation and the appointment of a guardian ad litem to protect Peter’s interests.

An evaluation report that recommended individual mental health treatment for Peter

and each of his parents and reunification therapy for Peter and Father was issued on

18 January 2011. The other pending motions were scheduled for hearing in March

2011.

 Following a three-day hearing, the trial court entered a twenty-one-page order

(“the North Carolina Custody Order”) on 6 June 2011, finding that a substantial

change of circumstances affecting the welfare of Peter had occurred since the entry

of the New York Custody Order. The court made specific findings of fact regarding

Mother’s interference with Father’s visitation, Father’s physical and verbal

aggression toward Peter, and Peter’s anxiety and emotional distress. The court

found, inter alia, that as of March 2011, Peter “did not appreciate the need to have a

relationship with his father” and that Mother had “overly nurtured” Peter and had

“stunted [Peter]’s social and emotional development” in the years since relocating

with Peter to North Carolina. The court also found that the appointment of a

parenting coordinator was appropriate because “this is a high-conflict case.”

 On the same date as it entered the North Carolina Custody Order, the trial

court entered an order (“the Contempt Order”) finding that Mother had willfully

 -4-
 TANKALA V. PITHAVADIAN

 Opinion of the Court

violated the New York Custody Order by depriving Father of weekend and holiday

custody and excluding Father from information and decisions about Peter’s education

and health care. The court concluded that Mother was in willful contempt but stayed

a sentence of imprisonment on the condition that Mother comply with all orders of

the trial court including the North Carolina Custody Order.

 The North Carolina Custody Order granted the parties joint custody, granting

Mother primary physical custody and granting Father periodic weekend and holiday

visitation, contingent upon approval by a psychologist whom the trial court

designated as a reunification therapist and also designated to treat Peter in

individual therapy. The trial court specifically ordered as follows:

 [Father] and [Peter] shall engage in reunification therapy,
 with Eli Jerchower as the reunification therapist. The
 reunification therapy shall begin at the time recommended
 by Dr. Jerchower, and the timing and methods of this
 reunification therapy (including whether and to what extent
 [Mother] takes part) shall be at the discretion of the
 therapist. [Father] and [Mother] shall both follow all of the
 recommendations of Dr. Jerchower regarding the
 reunification therapy, and this reunification therapy shall
 continue for so long as the therapist continues to
 recommend it.

(Emphasis added.) The trial court also ordered that the parties equally divide all of

the costs of the reunification therapy not covered by insurance. The trial court

required that Mother and Father each participate in individual counseling with

different therapists, providing that therapists for each of the parents and Peter be

authorized to communicate with one another, with the parenting coordinator, and

 -5-
 TANKALA V. PITHAVADIAN

 Opinion of the Court

with the guardian ad litem for Peter. The trial court further directed all therapists

to read a particular paragraph of the custody evaluation report regarding therapy

services recommended for Peter and his parents.

 Neither party appealed the North Carolina Custody Order.

 The reunification therapist, Dr. Jerchower, worked with Peter individually and

in joint sessions with Peter and Father, but observed in a report to the parties, the

parenting coordinator, and the trial court that Peter “maintained a defiant

oppositional stance when it came to his father and engaging with him in any way.”

By the spring of 2012, in the view of the reunification therapist, “it was clear that

[Peter] was no longer making progress in reunification with seeing his father” and

the therapist believed that a “more intensive treatment approach” was necessary.

 On or about 16 May 2012, nearly a year after entry of the North Carolina

Custody Order, the reunification therapist recommended that Peter and both of his

parents attend a four-day high-conflict divorce camp called “Overcoming Barriers” in

California beginning six weeks later, on 29 June 2012. The camp cost $9,000 per

family. The court-appointed parenting coordinator at the time, V.A. Davidian, agreed

with the therapist’s recommendation and on 4 June 2012 he instructed Mother and

Father to apply for the camp and make arrangements to attend with Peter. In

response, Mother asked the parenting coordinator to reconsider his recommendation,

and when that request was denied, Mother filed a Motion for Expedited Review of

 -6-
 TANKALA V. PITHAVADIAN

 Opinion of the Court

Parenting Coordinator’s Decision. The motion argued that requiring the parties to

attend the camp was not consistent with the terms of the North Carolina Custody

Order; exceeded the authority of the parenting coordinator; was not an appropriate

fit for the parties; was not in Peter’s best interest; and that the one-month time frame

between the recommendation and the camp dates was too short for the parties and

Peter to prepare and make travel arrangements. The motion also asserted that

Mother could lose her job if she missed work for the camp. It appears from the record,

however, that Mother did not seek to have her motion calendared for hearing, that

neither Father nor the parenting coordinator sought to have the motion calendared

for hearing, and that the motion was never heard by the trial court. The parties did

not attend the camp.

 A little over a year later, in an order dated 16 July 2013, shortly before Peter’s

fourteenth birthday, the trial court appointed a new parenting coordinator,

Genevieve Sims (“Ms. Sims”). On 23 September 2014, Ms. Sims filed a Notice of

Determination that Requires a Court Hearing pursuant to N.C. Gen. Stat. § 50-97,

attaching a report recommending, inter alia, that Peter and his parents attend the

out-of-state camp for families dealing with high-conflict divorce. The report stated

that Ms. Sims agreed with the reunification therapist’s assessment that Mother “has

engaged in behaviors demonstrating a lack of commitment to the reunification

process and those behaviors have been communicated to Peter in thought and

 -7-
 TANKALA V. PITHAVADIAN

 Opinion of the Court

actions.” Ms. Sims asked the trial court to accept the reunification therapist’s

recommendations, which were attached to and incorporated within her report. The

recommendations included the “Overcoming Barriers” camp that the reunification

therapist had recommended two years earlier. Ms. Sims advised the trial court that,

consistent with the recommendation of her predecessor and the reunification

therapist, she “strongly recommend[ed] that . . . the parties and child attend a

minimum of a four-day intensive reunification camp.”

 Ms. Sims also filed on 23 September 2014 a Notice of Hearing and Calendar

Request for three hours on 13 February 2015 for the trial court to consider her

recommendations. Counsel for both parties and Ms. Sims attended the hearing and,

after reviewing Ms. Sims’ report and attached materials, and considering the

arguments of counsel, the trial court agreed with Ms. Sims’ recommendation,

including specifically the camp, and asked for recommendations from counsel for each

of the parties as an alternative to the camp. Father’s counsel proposed requiring

Peter to visit with his paternal cousins in Delaware on weekends beginning in March

2015, providing Father the opportunity to see Peter for brief periods during those

visits. Mother’s counsel agreed with the proposed visitation schedule. The court

instructed counsel to confer with the reunification therapist as well as the therapists

for Father and Mother, all of whom were on telephone standby to testify at the

hearing, to discuss the proposed alternative. However, the trial court admonished

 -8-
 TANKALA V. PITHAVADIAN

 Opinion of the Court

the parties that if they could not agree on an alternative, “you’re going to camp.”

 The hearing resumed that same day, after counsel for the parties conferred

with the therapists. Ms. Sims reported to the trial court that the plan approved by

all therapists was for Peter to visit Father’s family in the Washington, D.C./Maryland

area, and to see Father over gradually increasing segments of time during those

family visits, and that “if that does not go well, then the parties will immediately

attend the first available four-day intensive camp.” To prepare for that contingency,

the reunification therapist would assist Mother and Father in immediately applying

for the camp, including sharing the cost of a $100 application fee for the next available

camp session, scheduled for April 2015 in Arizona. Counsel for Mother confirmed Ms.

Sims’ report of the plan approved by all therapists and asked the trial court if the

camp would take priority over all of Peter’s other plans, including attending school.

The trial court responded that “camp is number one on the priority list if things don’t

. . . work out.” The trial court elaborated that “if we have an issue where weekends

go well and there’s no camp in April and then for some reason things go downhill and

decline, we’re going back to camp.” The trial court reiterated that if the scheduled

visits “don’t progress according to the likes of the health care providers with those

weekends in the manner in which they’re going to set them out, then the first time

that there’s any resistance and everything comes off the track, everybody’s going to

camp.”

 -9-
 TANKALA V. PITHAVADIAN

 Opinion of the Court

 On 10 March 2015, Ms. Sims submitted a proposed order. The trial court judge

made modifications and entered an Order on 12 March 2015 (“the Order”). The

Order, which is the basis for this appeal, provided for Peter to visit on weekends with

paternal family members and Father on a recurring basis, with visitations beginning

in March 2015 in locations alternating between the D.C./Maryland area and the Cary,

North Carolina area. If the court-ordered visits were “not progressing,” the trial court

ordered the parties and Peter to attend the Overcoming Barriers Family Camp. The

trial court concluded that “[t]he Parenting Coordinator has the authority to order the

parents to attend the Overcoming Barriers Family Camp or any similar therapeutic

‘camp’ or intensive weekend experience offered by Overcoming Barriers.” Further,

the trial court added, “[a]ttendance for the weekend visits and/or [camp] shall take

priority over any other activity in which Peter is scheduled to be involved.”

 Mother filed a Notice of Appeal and a Motion for Stay of Proceedings. In her

motion for a stay of proceedings, Mother alleged, inter alia, that the findings of fact

were unsupported by sufficient evidence because no evidence was presented at the

hearing, there was no motion to modify the existing custody order, Mother was

entitled to (and did not receive) ten-day notice prior to a hearing to modify custody

per N.C. Gen. Stat. § 50-13.5, and the trial court did not find that there had been a

substantial change in circumstances. The trial court denied the motion.

 II. Analysis

 - 10 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

A. Appellate Jurisdiction.

 Before addressing the merits of the appeal, we must first address the issue of

appellate jurisdiction. The Order is a permanent order and thus fully reviewable on

appeal.

 “A judgment is either interlocutory or the final determination of the

rights of the parties.” N.C. Gen. Stat. § 1A-1, 54(a) (2015).

 A final judgment is one which disposes of the case as to all
 the parties, leaving nothing to be judicially determined
 between them in the trial court. An interlocutory order
 does not dispose of the case, but leaves it for further action
 by the trial court in order to settle and determine the entire
 controversy.

Washington v. Washington, 148 N.C. App. 206, 207, 557 S.E.2d 648, 649 (2001)

(quoting Veazey v. City of Durham, 231 N.C. 357, 361–62, 57 S.E.2d 377, 381 (1950))

(editing marks omitted). “In general, there is no right to appeal from an interlocutory

order.” Mills Pointe Homeowner’s Ass’n v. Whitmire, 146 N.C. App. 297, 298–99, 551

S.E.2d 924, 926 (2001) (citations and editing marks omitted).

 In the context of child custody orders, “a distinction is drawn in our statutes

and in our case law between ‘temporary’ or ‘interim’ custody orders and ‘permanent’

or ‘final’ custody orders.” Regan v. Smith, 131 N.C. App. 851, 852, 509 S.E.2d 452,

454 (1998) (citation omitted). “Temporary custody orders resolve the issue of a party’s

right to custody pending the resolution of a claim for permanent custody.” Brewer v.

Brewer, 139 N.C. App. 222, 228, 533 S.E.2d 541, 546 (2000). “Normally, a temporary

 - 11 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

child custody order is interlocutory and does not affect any substantial right which

cannot be protected by timely appeal from the trial court’s ultimate disposition on the

merits.” Brewer, 139 N.C. App. at 227, 533 S.E.2d at 546 (internal quotation marks

and citation omitted). “[A]n order is temporary if either (1) it is entered without

prejudice to either party, (2) it states a clear and specific reconvening time in the

order and the time interval between the two hearings was reasonably brief; or (3) the

order does not determine all the issues.” Senner v. Senner, 161 N.C. App. 78, 81, 587

S.E.2d 675, 677 (2003). “If the order does not meet any of these criteria, it is

permanent.” Peters v. Pennington, 210 N.C. App. 1, 14, 707 S.E.2d 724, 734 (2011).

 The Order does not meet any of the three requirements of a temporary order.

The Order was entered with prejudice to both parties and did not state a clear and

specific reconvening time. It only states that “[t]he Court retains jurisdiction for the

entry of further Orders[,]” which does not satisfy the “clear and specific” requirement

or the “reasonably brief” interval requirement. Senner, 161 N.C. App. at 81, 587

S.E.2d at 677. Finally, the Order determined all the issues before the trial court at

the hearing. The issue of child custody had already been resolved per the North

Carolina Custody Order entered 6 June 2011. The Order addresses all the issues

presented by the parenting coordinator and leaves none unresolved. Accordingly, this

Court has jurisdiction to review Mother’s appeal from the Order.

 During the hearing resulting in the Order, counsel for Mother did not raise

 - 12 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

objections based on any of the issues she raises in this appeal, including modification

of the visitation schedule or the requirement of the parties and Peter to attend the

out-of-state reunification camp on the ground that it constituted a modification of the

governing custody terms. For issues other than the camp, Defendant’s attorney

stated: “For the record, I do not object to the recommendations of the plaintiff. I

accept Your Honor's recommendations and agree that that seems to be a prudent way

to proceed.” Regarding the camp, Defendant made no objection for lack of a motion

to modify, notice of a motion to modify, or finding of substantial change in

circumstances necessary to modify the North Carolina Custody Order. However,

these issues concern subject matter jurisdiction and can be raised for the first time

on appeal. Hart v. Thomasville Motors, 244 N.C. 84, 90, 92 S.E.2d 673, 678 (1956).

Accordingly, Mother’s appeal is properly before us.

 1. Standard of review.

 “Absent an abuse of discretion, the trial court’s decision in matters of child

custody should not be upset on appeal.” Everette v. Collins, 176 N.C. App. 168,

171, 625 S.E.2d 796, 798 (2006). “Abuse of discretion results where the court’s

ruling is manifestly unsupported by reason or is so arbitrary that it could not have

been the result of a reasoned decision.” State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d

523, 527 (1988); see also White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)

(“A trial court may be reversed for abuse of discretion only upon a showing that its

 - 13 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

actions are manifestly unsupported by reason . . . [or] upon a showing that [the trial

court’s decision] was so arbitrary that it could not have been the result of a reasoned

decision.”).

B. The Order did not modify the North Carolina Custody Order and is not

 procedurally defective.

 Mother argues that the Order requiring the parties and Peter to attend the

high-conflict divorce camp and requiring additional visitation was invalid because it

modified a prior custody order without the required motion to modify and findings

and conclusions regarding a change in circumstances to justify such modification. We

disagree.

 Disputes over variations in custody arrangements including timing, location,

and treatment often lead to costly and time-consuming litigation that can hinder

progress in child custody cases and cause delays which are detrimental to the best

interests of the children involved. To avoid such delays, trial courts prepare

comprehensive child custody orders, like the North Carolina Custody Order

governing the parties in this case, and appoint parenting coordinators authorized to

facilitate the parties’ compliance with court orders without having to seek additional

orders from the court in every instance. In cases involving minor children requiring

mental health treatment, trial courts often delegate to therapists control over

treatment and visitation, but remain available to assert the court’s authority if

 - 14 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

needed. See Peters, 210 N.C. App at 18–20, 707 S.E.2d at 737–38 (affirming the trial

court’s delegation to the custodial parent, in conjunction with the minor children’s

therapist, control over the non-custodial parent’s supervised visitation: “Because a

neutral third party is vested with authority to control therapeutic visitation, the

visitation arrangement does not present the problems inherent in custodian-

controlled visitation.”); Cox v. Cox, 133 N.C. App. 221, 230, 515 S.E.2d 61, 67–68

(1999) (upholding the trial court’s order that a physician could “suspend or terminate

counseling, treatment, and supervised visitation if he determine[d] that [one parent]

[was] not progressing or working honestly toward improvement”).

 The Order does not modify the terms of custody, but rather provides specific

requirements within the scope of the North Carolina Custody Order. The Order does

not modify the earlier award of primary custody to Mother and visitation to Father.

The requirement that the parties and Peter attend the high-conflict divorce camp as

recommended by the reunification therapist and the parenting coordinator is

consistent with the requirement in the earlier order that the parties abide by those

professionals’ recommendations for treatment and visitation scheduling. Although

the North Carolina Custody Order did not mention an out-of-state therapeutic camp

for the family, it specifically ordered reunification therapy and provided that the

timing and methods of therapy were left to the reunification therapist to decide.

Similarly, specific provisions for Peter’s visitation with Father and Father’s family in

 - 15 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

the Order do not conflict with provisions in the North Carolina Custody Order.

Accordingly, no motion for custody modification was required, and the trial court was

not required to find or conclude that circumstances affecting the welfare of Peter had

substantially changed since the entry of the North Carolina Custody Order.

 Furthermore, Mother’s argument that she received inadequate notice of a

hearing concerning the out-of-state camp rings hollow in light of the record in this

case. Nearly five months before the hearing which resulted in the Order, the court-

appointed parenting coordinator filed a notice that a court hearing was required to

review her determination that the parties and Peter should be required to attend the

camp recommended by the reunification therapist within the scope of authority

delegated in the North Carolina Custody Order. As a practical matter, Mother had

more than two years’ notice of the reunification therapist’s recommendation and the

parenting coordinator’s determination that Peter and his parents attend the camp,

but she successfully avoided that treatment method by opposing the initial notice in

2012 and failing to seek a hearing. The record does not indicate that Father or the

parenting coordinator sought court intervention following Mother’s objection and

refusal to participate in the camp.

 1. Parenting coordinators.

 North Carolina’s parenting coordinator statutes were first adopted in 2005 as

Article 5 of Chapter 50 of our General Statutes. See Act of July 27, 2005, 2005 N.C.

 - 16 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

Sess. Laws 228 (“An Act to Establish the Appointment of Parenting Coordinators in

Domestic Child Custody Actions”). N.C. Gen. Stat. § 50-91(a)–(b) (2015) provides that

a “court may appoint a parenting coordinator at any time during the proceedings of a

child custody action . . . if all parties consent to the appointment[,]” or “if the court

also makes specific findings that the action is a high-conflict case, that the

appointment . . . is in the best interests of any minor child in the case, and that the

parties are able to pay for the cost . . . .” A parenting coordinator has the limited

authority to engage in matters that will help the parties:

 (1) Identify disputed issues.
 (2) Reduce misunderstandings.
 (3) Clarify priorities.
 (4) Explore possibilities for compromise.
 (5) Develop methods of collaboration in parenting.
 (6) Comply with the court’s order of custody, visitation, or
 guardianship.

N.C. Gen. Stat. § 50-92(a)(1)–(6) (2015). A trial court “may authorize a parenting

coordinator to decide issues regarding the implementation of the parenting plan that

are not specifically governed by the court order and which the parties are unable to

resolve. The parties must comply with the parenting coordinator’s decision until the

court reviews the decision.” N.C. Gen. Stat. § 50-92(b) (2015).

 North Carolina’s parenting coordinator statutes have been largely unexplored

by the appellate courts. This case demonstrates the potential utility of parenting

coordinators as well as the procedural safeguards that, if the parties assume the

 - 17 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

responsibility of seeking the court’s intervention, ensure the trial court remains

involved in resolving disputes between the parenting coordinator and one or both

parents. However, the failure of the trial court and the parenting coordinator in this

case to obtain the parties’ compliance with the North Carolina Custody Order for a

period of nearly four years demonstrates the shortcomings of family court proceedings

in which fundamental disputes languish while the child approaches adulthood. As a

result of inaction, this high-conflict child custody dispute was not resolved any more

quickly than it likely could have been without a parenting coordinator.

 2. The Order is not a child support order.

 In her final challenge to the Order, Mother contends that because the Order

compels her and Peter to participate in the camp at some financial expense, and

because the Order compels her to facilitate Peter’s travel to visit Father, it is an

invalid modification of the parties’ child support obligations, which are beyond the

scope of the trial court’s jurisdiction. This argument is unsupported by the record

and the law.

 Mother correctly notes that although Father registered the New York Custody

Order with the trial court in this case, neither party registered the initial judgment

of divorce filed in New York in 2003, so that the trial court has no jurisdiction over

the terms of that order. However, Mother erroneously contends that because

uninsured mental health expenses and travel expenses may, in the trial court’s

 - 18 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

discretion, be allocated as “extraordinary expenses” for the purpose of determining

child support, the trial court here had no authority to require Mother to pay these

expenses as part of the Order. The New York Custody Order, which was registered

by the trial court below, required Mother to pay all travel expenses incurred by Peter

and by Father for visitation. The North Carolina Custody Order found that neither

Father nor Mother remained living in New York, that Mother and Peter had resided

in North Carolina for more than six months preceding Father’s motion to modify

custody, that North Carolina had become Peter’s home state, that the trial court had

jurisdiction to modify child custody, and that no other state had sought to modify the

custody arrangements. The North Carolina Custody Order, which included findings

of a substantial change in circumstances, provided that “[e]ach party shall bear the

costs of his or her own travel related to custody exchanges, and the parties shall

equally divide the cost of [Peter]’s travel related to custody exchanges.” The North

Carolina Custody Order made similar provisions for all costs of individual and

reunification therapy not covered by insurance. The decisions by this Court cited by

Mother as requiring that travel and mental health treatment costs be determined

within a child support order do not so hold. See Peters, 210 N.C. App. at 23, 707

S.E.2d at 739; Mackins v. Mackins, 114 N.C. App. 538, 548, 442 S.E.2d 352, 358

(1994); Lawrence v. Tise, 107 N.C. App. 140, 149–50, 419 S.E.2d 176, 182–83 (1992).

 III. Conclusion

 - 19 -
 TANKALA V. PITHAVADIAN

 Opinion of the Court

 We conclude that the trial court had jurisdiction to enter the Order from which

this appeal arises and that the trial court did not abuse its discretion. The order of

the trial court is

 AFFIRMED.

 Judges STEPHENS and HUNTER, JR. concur.

 - 20 -